## Beecher, Appellant, v. Newcomer.

*Land law—Boundaries—Surveys—Monuments—Calls—Courses and distances.*

1. The most persuasive evidence of the original location of a survey are the monuments made upon the ground by the surveyor for that survey, such as the marking of trees for corners and lines, or the adoption of natural monuments, such as streams crossing the lines of a survey. These monuments prevail, where satisfactorily shown to exist, against calls for older surveys, which rank next in value. Calls for corners, such as posts, stones, etc., are of little value, particularly

as the survey becomes old, for the reason that there is no way of complete identification or of the determination as to their age or the time at which they were made. Calls for older and well-marked surveys rank next in value. Courses and distances are of still less value, and are to be resorted to only when monuments and calls fail, and are to be disregarded, when they contradict the monuments and calls.

2. A judgment on a verdict for plaintiff in a case involving the location of a survey will not be reversed because the trial judge somewhat magnifies the difficulties under which the jury will labor in determining the location of the land, if it appears that the question was left finally, entirely and fairly to the jury.

3. Where there is a conflict of testimony as to the location of a survey, the question of its location is for the jury.

*Practice, C. P.—Trial—Verdict—Jury—Reformation of verdict.*

4. Where a jury practically find a verdict in favor of the plaintiff, although not stated in the proper form, seal their verdict and separate, and after an interval of four days by reason of intervening holidays, meet again, and upon the opening of the verdict the court instructs them either to find for the plaintiff for a sum stated, or if they find for the defendant, so to state it, and the jury return with a verdict for defendant, it is the duty of the court to refuse such verdict. If it fails to do so, the judgment on the verdict will be reversed by the appellate court and a new trial ordered.

Argued Dec. 9, 1910. Appeal, No. 220, Oct. T., 1910, by plaintiffs, from judgment of C. P. Schuylkill Co., Sept. Term, 1903, No. 140, on verdict for defendants in case of John W. Beecher and Mahlon H. Boyer v. Theodore Newcomer et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass for cutting timber. Before BRUMM, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–8) instructions referred to in the opinion of the Superior Court; (9–15) rulings as to the verdict.

*A. W. Schalck* and *J. W. Moyer*, for appellants, cited as to the rulings on the verdict: Kramer v. Kister, 187 Pa.

227; Wolfran v. Eyster, 7 Watts, 38; Reitenbaugh v. Ludwick, 31 Pa. 131; Beates v. Retallick, 23 Pa. 288; McConnell v. Linton, 4 Watts, 357; Byrne v. Grossman, 65 Pa. 310; Watkins v. Bldg. & Loan Assn., 97 Pa. 514; Sullivan v. Hanover Cordage Co., 21 York Leg. Record, 151; Wood Paving Co. v. Bickel, 14 Phila. 152; King v. McKinstry, 32 Pa. Superior Ct. 34; McMahan v. McMahan, 13 Pa. 376; Connolly v. Shannon, 3 Lack. Leg. News, 247.

*W. F. Shepherd* and *Jno. F. Whalen,* with them *I. A. Reed,* for appellees.—The only valid verdict is that which the jury announces orally in court, and which alone is received and recorded as the jury's findings: Rottmund v. R. R. Co., 225 Pa. 410.

The paper signed and sealed by the jury is not the verdict but a mere memorandum; it is not part of the record and does not become such by filing. The finding in open court is the only true verdict: Duane v. Simmons, 4 Yeates, 441; Dornick v. Reichenback, 10 S. & R. 84; Rees v. Stille, 38 Pa. 138; Com. v. Houghton, 22 Pa. Superior Ct. 52; Ramage v. Peterman, 25 Pa. 349.

OPINION BY BEAVER, J., March 3, 1911:

The determination of the question of fact raised in this case involves some of the fundamental principles governing the location of warrants for original surveys of unappropriated land belonging to the commonwealth. These questions are well settled and are, in the last analysis, not seriously controverted in the trial below, or in the argument here.

The most persuasive evidence of the original location of a survey are the monuments made upon the ground by the surveyor for that survey, such as the marking of trees for corners and lines, or the adoption of natural monuments, such as streams crossing the lines of a survey. These monuments prevail, where satisfactorily shown to exist, against calls for older surveys, which rank next in value. Calls for corners, such as posts, stones, etc., are

of little value, particularly as the survey becomes old, for the reason that there is no way of complete identification or of the determination as to their age or the time at which they were made. Calls for older and well-marked surveys rank next in value. Courses and distances are of still less value, and are to be resorted to only when monuments and calls fail, and are to be disregarded, when they contradict the monuments and calls.

These principles seem to have been, in the main, fairly well considered in the trial of this cause, and adhered to by the court in its charge to the jury.

The question of fact raised by the evidence in the case was undoubtedly for the jury and, notwithstanding the very unsatisfactory character of the location of the lands claimed by the defendants, as covering the ground upon which the alleged trespass was committed, being based upon a mere protraction of the block of surveys, known as the Lice block, and the lack of work upon the ground by the defendants' surveyors, we think the question was for the jury.

The answer of the court below to the plaintiffs' second point, which constitutes the first assignment of error, is, we think, on the whole, proper. It was certainly for the jury to determine what the location of the Christopher Lice tract was and whether or not Trout Run was wholly upon it or was partly upon it and partly upon the tract or survey known as the Power and Stealy tract. The question was hence one of fact under the evidence, and was properly left to the jury.

The second, third and fourth assignments relate to the answer of the court to one of the defendants' points and the charge growing out of the same question. The point, as put in the second assignment of error, was regarded by the court as incomplete and the defendants were cautioned to put it in more complete form, which was done as follows, as set forth in the third assignment: "That, if the plaintiffs were the owners of the land and there was no adverse possession, they would have sufficient possession

to enable them to maintain an action of trespass; but, if there was at the time a bona fide claim of title in Theodore Newcomer to the land where the timber was cut, and these defendants were acting under such claim, then this action cannot be maintained," which point was affirmed.

The part of the charge assigned for error in the fourth assignment has to do with the same question, and is as follows: "There has been some controversy here as to whether the question of ownership or claim of ownership, or possession under claim of ownership, or you may call it adverse possession, whether you would have anything to do with that question in arriving at your verdict. We think you have to deal with that question; that is, if you find, under all this evidence, that the defendant in this case has possession under a claim of title, a bona fide claim, of course, and was cutting this timber under such a possession and bona fide claim, or claim under good faith, of title, your verdict should be for the defendants." Both the answer to the point and the charge are we think in accordance with the law, as it is laid down in many authorities, and practically raised the question as to whether or not the claim of the defendants to the land upon which the timber was cut was valid. If so, they had a right to cut the timber, because it belonged to them, and the real question, therefore, in the whole case was whether or not there was vacant land outside the Christopher Lice and the Power and Stealy and Capp and Bohr surveys, upon which the Theodore Newcomer survey, under which the defendants claimed, could be located. If there was such vacancy, the defendants' claim was good and the land belonged to them, for, as we understand the testimony, there is entire accord between the plaintiffs and defendants as to the location of this warrant to Newcomer.

The fifth, sixth, seventh and eighth assignments of error deal with different parts of the same paragraph in the charge of the court. When taken together, we think they explain each other and do away with much of the complaint of the appellants.

The remarks of the court, as complained of in the fifth, sixth and seventh specifications of error, in regard to the contradictory and inconsistent claims of the plaintiffs, were not intended to bear the construction which the plaintiffs give them. As we understand the language of the court, the intimation simply was that the Power and Stealy and Capp and Bohr surveys, being laid on top of the Christopher Lice, contradicted each other, at least as to their original location, and this, of course, was true, solely as a question of location, but, inasmuch as the plaintiffs owned both of these titles, they were rather confirmatory than contradictory and, in that view of it, simply as a question of title, of course, the court would have been in error, but any wrong impression which may have been made upon the jury was corrected in the same paragraph, or in connection with the same, when the court said, covering the entire question: "The main question, however, here is as to the ownership of the land where this timber was cut; and we say here, in starting out, that the question is not as to the ownership of the whole of the Lice tract, and the question is not as to the ownership of the whole of the Power and Stealy tract; but the question is as to the owner of the piece of ground where this timber was cut. To make myself plain, you need not go any farther than to ascertain, if you can, from this testimony, who owned that piece of ground marked on the map where this timber is cut. It is not defined by metes and bounds; the number of acres is not given, but it is specifically enough pointed out to enable you to ascertain who, at that point, owned the land. We see great difficulty in ascertaining or in arriving at the fact as to who does own it. The plaintiffs themselves contradict their own claim, in this: They claim that they own it by virtue of the purchase of the David Capp and William Power, William Power and Benjamin Stealy, and David Capp and John Bohr. They claim that they own it by virtue of those three tracts, or at least near all of it. Then they also claim that they own it by virtue of the purchase of another

tract, the Lice tracts. Though purchased at the same time, when they come to give you the metes and bounds and the location of the land in dispute, they give you contradictory maps to locate it. Of course, the piece that they claim is within both. If they satisfy you as to any one of their claims, all other things being as we have stated and will state, they are entitled to a verdict, but we only cite this to show how extremely uncertain the claim is, and how impossible, in our judgment, it is for you to arrive at a positive location of this land by virtue of these surveys. Every one on the part of the plaintiff and the defendant contradict each other. You may take it by metes and bounds, by calls, by monuments, by distance, or any way, and every one of these claims is contradictory of every other one, excepting, of course, those that are not necessarily or essentially involved in the location of this particular spot." It is clearly evident that the court uses the terms contradiction and contradictory in reference to location and not to title.

In one sense, of course, the claims of the plaintiffs in both series of surveys through which they claimed, and that of the defendants, were conflicting and contradictory, because they all covered the same ground, but the court made it perfectly plain to the jury that, if they found the ground upon which the timber was cut to be within the lines of the surveys, or either series of surveys under which they claimed, they could find for the plaintiffs, and, as a matter of fact, the question as to where the land was actually located and within what survey it was located, was finally and entirely left to the jury. In the sense, therefore, in which the terms were used, we cannot see that the plaintiffs were in any way injured. It is true that the court somewhat magnified the difficulties under which the jury would labor in determining finally where the land was located, but it was left fairly to them to find, and the facts were explained in such a way that the meaning of the court was clearly evident. We cannot conclude, therefore, that the plaintiffs were in any serious manner injured

by what the court said; although the language as used was
open to fair criticism and cannot be approved.

We are clearly of the opinion that the court could not,
as a matter of law, have directed the jury to find for the
plaintiffs on the question of location.  The case here is en-
tirely different from Eister v. Paul, 54 Pa. 196, which is
cited by the plaintiffs as authority for the position that
the court should have instructed the jury, because the
location fixed by the plaintiffs was entirely satisfactory, to
find for the plaintiffs.  A number of questions are very
clearly set forth in the opinion of Mr. Chief Justice WOOD-
WARD, than whom Pennsylvania has had few, if any, better
land lawyers.  He says: "The location of surveys, that is,
the precise position which they were intended to occupy
upon the ground, is generally a question of fact to be de-
cided by the jury, but where the evidence is all one way,
and is so satisfactory that a court would not sustain a
verdict that should find against it, we will not reverse the
judgment because the judge declared the true effect of
the evidence instead of submitting it to the jury.  If the
judge mistake the effect of the evidence, he commits a
double error, one in withholding it from the jury, and the
other in misjudging it himself.  But in this instance we
discover no error.  The John Strembeck tract was one of
a series of warrants issued in 1794, and returned with its
fellows as surveyed the same year, in a block of connected
surveys.  There was no evidence to impeach or establish
any of the other tracts of the block, and the presumption
is that they were located as returned into the land office.
Strembeck adjoins Isaac Price as returned, and its position
on the ground as claimed by the defendants is consistent
with the relation it bears to the other tracts of the block
in the land office.  On two sides it called for older surveys,
one in the name of Isaac Yarnell, and the other in the name
of John Kunkle, which were surveys of 1792.  The lines
of these tracts were found on the ground, but no marks
were found upon the Strembeck tract.  The call for John
Kunkle was probably a mistake, for a tract in the name of

Hannah Yarnell, also a survey of 1792, lies between Strembeck and the Kunkle. But Isaac Yarnell lies where it was called for, and in connection with the presumption that arises in favor of the location of the block of which Strembeck is a part, it is sufficient to determine the location of the Strembeck tract. A well-located older warrant, is a sure means of locating a younger warrant that calls for the older, especially when both warrants belong to respective blocks, whose location has not been questioned for more than half a century." This quotation from the opinion shows clearly that the facts in that case were entirely different from those which confront us in this.

With the exception of the Peter Humma tract, there seems to be very little of original work in this region which is beyond question. Even the Kilion Long, for which the Christopher Lice calls, is interfered with by its lines, as located by the plaintiffs, and this may be necessary, in order to carry the Christopher and Peter Lice to the call of the Peter Humma, and this, taken in connection with the fact that the plaintiffs have two series of surveys which lie directly on top of each other, would seem to indicate a condition of things in which it would have been a very dangerous assumption on the part of the court to have directed the jury to find that the plaintiffs' location was correct and that of the defendants incorrect. It was clearly a question for the jury, and, taken as a whole, was not unfairly submitted for its finding.

We come now to a question in which we find greater difficulty, and that is covered by the assignments of error from No. 9 to No. 15, inclusive, all of which practically relate to the verdict of the jury and the manner in which it was finally recorded.

The jury was sent out on Friday, May 28. The twenty-ninth was Saturday, the thirtieth was Memorial Day, but being the Sabbath it was observed on Monday, the thirty-first, and, on Tuesday morning, June 1, the jury came into court with a sealed verdict. What purported to be the

verdict was contained upon a calculation evidently sent out by the plaintiffs:

PLAINTIFFS' CLAIM

| | | |
|---|---|---:|
| "9 Trees at | $1.50 ...................... | $13.50 |
| 1 Tree at | .75 ...................... | .75 |
| 1 Tree at | .50 ...................... | .50 |
| | | $14.75 |
| Doubled | ........................... | $29.50 |

There is then an addition said to have been made by the jury: "Triple Damage for tree taken away $2.25," making together $31.75. "5–29–'09. We find the defendant guilty of cutting this timber on the supposed vacant land." (Signed) "John J. Glavey, Foreman."

The ninth assignment of error is: "The court erred in refusing to receive the sealed verdict of the jury, as presented by them on June 1st."

The tenth assignment alleges error "in not molding at bar such sealed verdict, which was substantially and practically a verdict for plaintiffs and against defendants, for the amount of plaintiffs' claim as found by the jury, to wit, $31.75, and in not directing it to be entered so as to fulfill its manifest purpose."

The eleventh assignment is: "The court erred in rejecting said sealed verdict and sending the jury back to their room with further instructions, in the absence of plaintiffs' counsel."

The twelfth: "The court erred in receiving the second verdict of the jury and filing the same, and entering judgment thereon, which verdict now reads as follows: 'We, the jury, find a verdict in favor of the defendants.' John J. Glavey, Foreman."

The other assignments simply put the alleged error in different forms, and they can be disposed of by the discussion of the question as to whether or not the verdict, as rendered originally, was in effect a verdict for the plaintiffs, and should a verdict have been received by the court

after the jury had agreed upon their first finding, and had separated for at least portions of four days and, upon their return and being sent to their room, returned a verdict materially different in its essential features from that upon which it was alleged they had agreed previously.

A verdict of a jury to be binding usually consists of four distinct steps: (1) a unanimous agreement or finding; (2) a public presentation of such finding to the court; (3) the approval of the court, and (4) the record of the finding. When such a record has been made and the jury discharged, the record becomes the verdict which cannot be altered by the jury or the court: Walters v. Junkins, 16 S. & R. 414.

In the early case of Wolfran v. Eyster, 7 Watts, 38, it was held that: "If the jury return an informal verdict, it is not error for the court to direct them to return and put it into proper form, although they had previously separated after sealing it. It is the duty of the court to have all such formal defects amended." It was said in that case by Mr. Justice Huston, who delivered the opinion: "I speak of amending mere defects in form, not substantially changing the finding of the jury. When the correction is made, the recorded verdict is the only proper one; and the paper returned by the jury is no part of it: Dornick v. Reichenback, 10 S. & R., 84."

The practice of allowing the jury to seal their verdict and separate before making public presentation of it to the court is of comparatively recent growth, but has become settled and well-recognized practice. In a discussion of this practice in Kramer v. Kister, 187 Pa. 227, Mr. Justice Mitchell said: "No jury can demand it as a right in any case, and in certain cases no judge can grant it as a matter of grace. The necessity that the verdict shall not only be fair and unbiased, but beyond reasonable apprehension of danger that it is otherwise, must be the controlling element in determining the limits of the convenience of the jurors and the discretion of the judge. When a juror dissents from a sealed verdict, there is a necessary

choice of evils, a mistrial or a verdict finally delivered under circumstances that justly subject it to suspicion of coercion or improper influences. We are of opinion that the former is the lesser evil. If one juror can dissent, so may all change their view and render a new verdict exactly opposite to the one they first agreed upon and sealed. There can be no better illustration of the dangers of such a privilege than the present case. If the dissenting juror was honest in his declaration that he had not agreed to the first verdict, except because he thought he was obliged to, then his agreement as to the second without having been instructed as to his rights cannot be freed from a well founded appearance of coercion. If, on the other hand, the second verdict had been for the defendant, contrary to the first, the inference could hardly have been escaped that the change was produced by new evidence or information illegally acquired by the dissenting juror, or even by more reprehensible means. The only safe way out of such a situation is to treat it as a mistrial and discharge the jury."

These remarks have striking application to the case which we are now considering.

The jury, as the presentation of their finding to the court shows, agreed on Saturday, May 29. As we remember the evidence, it was presented on Tuesday, June 1. The presentation, as already shown, consisted of a calculation, part of which at least is the claim of the plaintiff, to which was added $2.25 trebling the value of a tree, which the testimony shows was carried away, making in all $31.75, accompanied by this finding: "We find the defendant guilty of cutting this timber on the supposed vacant land," which was signed by the foreman. This, as we interpret it, could mean just one thing—that the jury found for the plaintiff the amount set forth in the statement. The verdict, of course, however, was not in proper shape for record, and the court very properly sent the jury back to put it in such shape. What was said to them, when they were sent back, does not appear in the record, but the

trial judge subsequently puts upon the record his recollection of what was said, as follows:

"On Wednesday, June 2, 1909, the court directed the stenographer to add the following statement to the record: The jury came into court on Tuesday morning, June 1, 1909, with a sealed verdict as follows: 'The jury find that the defendant was guilty of cutting down trees.' The court then instructed the jury that that verdict was not correct, inasmuch as it did not name the parties and was not the proper verdict to render in the case; that it indicated that probably they intended to render the verdict in favor of the plaintiff; if they did, that the proper verdict would be: We find the verdict in favor of the plaintiffs, naming them, for so much, naming the amount they find due; if the verdict was in favor of the defendants, they should simply say, We find in favor of the defendants, naming them. Whereupon the jury were sent back. They then came in again with a verdict in favor of the defendants, as recorded." The quotation from the finding of the jury, as made by the court in the dictation to the stenographer, is not quite correct. Their finding was, after setting forth in detail the value of the trees cut: "5–29–'09, we find the defendant guilty of cutting this timber on the supposed vacant land." This, as will be seen, is altogether different from the quotation of the court: "The jury find that the defendant was guilty of cutting down trees." It was more than cutting down trees, but of "cutting down this timber," evidently what was contained in the statement, "on the supposed vacant land," evidently the part in dispute. The quotation by the court is very indefinite as to what trees and where they were located. As found by the jury, the inference as to what trees were cut, and where they were cut, is practically certain and easily made.

If the court was correct in its interpretation of the sealed finding of the jury, as presented after their separation, its duty was fully met by calling their attention to the informality of the finding and a direction as to the manner in which it should be corrected. It seems to us that its

authority was exceeded when it authorized the jury to return a verdict for the defendants. The finding of the jury was in writing, and the court was fully capable of interpreting it, and, when the interpretation was properly made, as we think it was, the instructions to the jury should have ceased when they were instructed as to the manner of reforming it. The initial error was in instructing the jury that they could find for the defendants, after having practically found for the plaintiffs, sealed their finding and separated. When, however, the jury returned with a verdict directly the opposite of their finding, which had been publicly presented to the court as their sealed verdict, it seems to us it was incumbent upon the court to make some definite adverse disposition of their finding and not to have had it recorded as their verdict.

The jury had been separated parts of four days—Saturday the twenty-ninth, Sunday the thirtieth, which was a legal holiday but which was doubtless observed as a holiday on Monday the thirty-first, no court probably being held on that day. They came in, therefore, on Tuesday morning, June 1. Hence there arose the very condition spoken of in Kramer v. Kister, 187 Pa. 227. The second verdict, or the second finding, which was recorded as the verdict, was for the defendants, contrary to the first. Do not the remarks of Judge MITCHELL, therefore, apply, that "The inference could hardly have been escaped that the change was produced by new evidence or information illegally acquired by" not "the dissenting juror" but the entire jury "or by even more reprehensible means"? It follows, therefore, that the conclusion should be reached that "The only safe way out of such a situation is to treat it as a mistrial and discharge the jury." The grounds for declaring it a mistrial were specially persuasive here, because the verdict might have been received on Monday morning instead of allowing the jury to be separated that entire day, which was not in any sense a dies non, but being observed as a holiday afforded peculiar facilities for jurors to mingle indiscriminately with the public.

Following the cogent reasoning of Kramer v. Kister, 187 Pa. 227, we are clearly of the opinion that the second finding of the jury should not have been received and regarded as its verdict by the court. It not only gave rise to the injurious inferences to which it was subject but would seem to us, if approved, to be a dangerous precedent which might give rise to the most grave suspicions and serious consequences.

We do not wish to be understood as departing in anywise from the rule of our court not to regard as serious the exercise of the discretion of the court in refusing a new trial, under ordinary circumstances, but where there is a manifest mistrial the error is back of the refusal of the new trial, and we base our conclusion upon the reception by the court of the second finding of the jury, which was evidently directly the opposite of its first finding, and the judgment based thereon should not, under the peculiar circumstances, be allowed to stand.

Judgment reversed and a new venire awarded.