# CARLOS MARTINEZ

*v.*

# VALDES.

---

San Juan, Law, No. 1185.

## CHANGE OF VERDICT AFTER SEALING.

Practice—Sealing Verdicts.

    1. At common law verdicts must be rendered in court, and the custom of rendering a sealed verdict is one which has grown up as

X. Porto Rico.—29.

Martinez v. Valdes.

a matter of convenience to judge and jury. The jury must in such a case return in open court for the rendition of the verdict. The sealing of verdict in reported cases was upon agreement of the counsel.

Same—Rule of Court—Reporting Verdict.

2. In the Federal court of Porto Rico the jury is permitted by rule of court to agree upon a verdict and to deliver the same to the marshal in a sealed envelop, but they shall appear in court at the next opening thereof to report the verdict. This rule contemplates that the verdict is complete when delivered, and, except when there has been something improper connected with the signing of the verdict, it cannot be changed by the jury themselves.

Same—Jury Mingling with Public.

3. In Porto Rico, the jury in civil cases obtains only in the Federal court, and gatherings in public are so common that it would neutralize the effect of the jury system to permit jurors to leave the custody of the marshal and go at large, and then be permitted to change their verdict.

Sealing Verdict—Court Rule.

4. The rule of comity not applying as to juries, because there is no civil jury in Porto Rico, the Federal court, under R. S. § 918, can make its own rules of practice, and a rule that a jury's verdict is final upon sealing is not improper.

Opinion filed June 21, 1918.

_Mr. H. R. Francis_ for plaintiff.

_Mr. Leopoldo Feliu_ for defendant.

HAMILTON, Judge, delivered the following opinion:

In this case, at the assembling of court on June 14, the foreman of the jury, in response to the question of the court whether the jury had agreed upon a verdict replied that they

Martinez v. Valdes.

had done so the night before at about half past ten o-clock, and that it had been signed and sealed by him at the request of the jury, and handed to the marshal; but that this morning, June 14, one of the jurors had notified the foreman that he had changed his mind. The foreman thereupon rendered the sealed verdict to the court and asked if counsel had any suggestion to make. Counsel for the defense said he thought a mistrial should be entered, and the counsel for the plaintiff had nothing to say. Whereupon the court, as usual, opened the envelop, saw that the verdict was signed by the foreman, and handed it to the clerk, who thereupon read the verdict aloud. The court directed the clerk to enter the verdict as usual, but not to enter judgment thereupon until parties had time to take such action as they might be advised, and then the court dismissed the jury.

The matter was argued on next motion day on behalf of the defendant and submitted.

1. At common law it would seem that a verdict must be that of the whole jury at all times up to its being filed in court, and that the dissent of any juror in the meanwhile is sufficient to destroy the unanimity which is required by law. The practice of sealing the verdict is one unknown to common law, and has grown up in America upon express agreement of counsel as a matter of convenience, in that it prevents summoning the judge to receive the verdict at unreasonable hours, and it enables the jury, after agreement, to be dismissed, instead of spending the night in the custody of the marshal. This is not by any means the first case in which a juror has changed his mind after assenting to a verdict and securing discharge for the night. It has been held that the agreement of the jury must not only be

Martinez v. Valdes.

complete at the time of sealing the verdict, but must continue until the verdict is filed with the court at its next session. Bouvier's Law Dist. s. v. Sealing Verdict.

No Federal cases have been found, but it has been held in Pennsylvania (Kramer v. Kister, 187 Pa. 227, 44 L.R.A. 432, 40 Atl. 1008) that a sealed verdict is part of the growth of modern practice, but is not a right to be demanded by the jury; and that when a juror dissents from a sealed verdict the result is a mistrial. In Kansas, the court directed a verdict, which was rendered; and when the jury was polled and two jurors announced that it was not their verdict, it was held that a verdict could not be entered, the proper practice being to enter a mistrial and send the case to another jury. Bowman v. Wheaton, 2 Kan. App. 581, 44 Pac. 750. In Kansas also, a jury sealed a verdict, and this was entered without requiring the presence of the jury; and in such case it was held the verdict was not complete and should be set aside. Rigg v. Bias, 44 Kan. 148, 24 Pac. 56. There can be no doubt that it is the duty of the jury to return in open court and render the verdict, in order for it to be effective. 2 Thomp. Trials, § 2632. This, however, is a different question from the effect of a dissent of one juror after the verdict has been sealed.

2. So far, as to sealing verdict by agreement of counsel. The case at bar, however, is not governed by agreement of counsel. There was none such entered of record, and this case is governed by Rule of Court No. 57, which reads as follows: If the jury agrees upon a verdict after the court has adjourned for the day, they may deliver the same to the marshal in a sealed envelop, but they shall appear in court at the opening thereof next after such adjournment to report said verdict.

Martinez v. Valdes.

The court will instruct the jury in its charges as to this rule. [6 Porto Rico Fed. Rep. LXIII.]

The question, therefore, is, What is the meaning of this rule? What may be the terms of the agreements of counsel in the cases above cited is not always clear, and we have to decide this case under the terms of the rule. It contemplates (1) an agreement upon the verdict and its signature, and (2) appearance at the next session to report the verdict. This would seem to work certain changes in the matter of verdicts as at common law. The contemplation is that the agreement is to be before the jury is released, and this release is conditioned upon the agreement; no agreement, no release. This being so, it is difficult to see how there can be any further agreement necessary or any further disagreement possible. This view is also borne out by the change of wording in regard to the way in which the verdict comes before the court. The previous practice was what probably still obtains in most of the states, that is to say, that the jury appears the next morning to "verify" the verdict, and in the practice of this court the judge still asks if this is the verdict of the jury. To "verify" and to "report" have two different meanings. Where the verdict is verified, as under the usual practice in the states, it may well be that the dissent of a juror in the meantime would be fatal, and it is in this light that the cases above cited are to be looked at. To "report" a verdict would seem to be a different thing, and indeed should be construed as a different thing, because a different word is used for the process. The proper construction would seem to be that the jury appears the next morning in order to hand the verdict to the judge, so as to make sure that there has been no tampering with the verdict by anyone while it has been in the

Martinez v. Valdes.

hands of the marshal. There is no question that, there had
been anything improper connected with the signing of the
verdict, this would invalidate it. If any improper influence
had been brought to bear to secure the agreement of the ver-
dict the night before, the court would refuse to accept it as
the verdict of the jury. The wording of the rule, therefore,
would indicate that there is not to be taken into account any
change in the minds of any of the jurors after the signature of
the verdict; all the court would be concerned with would be
any impropriety in the agreement before the signing of the
verdict.

3. This view is confirmed by the public situation in Porto
Rico. Porto Rico was a Spanish colony, and is thoroughly
permeated with Spanish influences and traditions. At the time
of the American occupation there was no jury. The American
military commanders, although alert to aid the interests of the
island in every way, did not introduce a civil jury in the in-
sular courts, and in the seventeen and a half years of practical
autonomy by the people themselves they have not provided for
it in civil cases. It has prevailed in the provisional court in
particular cases, at the discretion of the court, by military order
No. 88, June 27, 1899 (Laws and Orders Effective in Porto
Rico, 2215), and regularly in this district court from the
Foraker Act, April 12, 1900; and in general it may be said
it has proved successful. Nevertheless, as to the island as a
whole, the civil jury may be said to be still in its trial stage.
A jury in this court is perhaps a select body, in as much as its
members must understand English, and therefore must be men
of education.

The lack of liberty in Spanish times developed the Porto

Martinez v. Valdes.

Ricans along different lines, and with different results, from the citizens of the United States, and, although all are now Americans, the results of the old evolution will remain in whole or in part for a long time to come. The lack of practical liberty resulted in the people of spain and Porto Rico centering their interest in business and fiestas, and the ties of family and social influences are stronger than in Anglo-Saxon countries, Men gather, especially at nights, to talk in the plaza quiet in Athenian style, and rumors and gossip abound. So long as the jury is under the charge of the marshal, it acts in the same manner as in the states; but as soon as the jurors leave the Federal building, influences public and social are entirely different. Jurors might be subjected to influences which could never be traced, and, even when of the best intentions, might readily receive impressions which would not be based upon the evidence given upon the trial. It would largely neutralize the benefit of the jury system in Porto Rico to allow jurors to leave the jury room, circulate among the public at large, and then be permitted to change their verdict. There would be a complete loss of the certainty necessary in verdicts.

4. The question still remains, however, whether the court has a right to make a rule which changes the common practice in the states. The Constitution of the United States has not been imported to Porto Rico in its entirety by the Organic Act, and in particular a jury in civil cases is not required; but Amendment 7, providing for a civil jury, has in effect been adopted as a part of the procedure of this court, under the act of Congress creating this court, and must be considered as a part of the institutions of the United States district court; in other words, this court could not abolish jury trial by a rule

of court. A party is entitled to a jury in civil cases, and that means a common-law jury. Can this court adopt a rule which will change the procedure of the jury in the way required by the rule above discussed?

There is no question that the Constitution of the United States adopted the common-law jury as it prevailed at that time in England, and not as it existed under varying forms in the colonies. Alexander Hamilton in the Federalist, held that it was impossible in the nature of the thing to fix a salutary point at which the operation of the institution ought to stop, and this was with him a strong argument for leaving the matter to the discretion of the legislature, which was the case in Great Britain. He declared that "the truth is that the general genius of a government is all that can be substantially relied upon for permanent effect." Federalist No. LXXXIII. In this particular case the Federal legislature would seem to have left the necessary evolution of the jury system to the courts, provided only that the substantial and essential parts be not changed. The essence of the jury right is a trial of an issue of fact by twelve men under the direction and superintendence of the court, which in civil cases might in its discretion, set aside a verdict. United States v. 1363 Bags of Merchandise, 2 Sprague, 85-88, Fed. Cas. No. 15,964; Capital Traction Co. v. Hof, 174 U. S. 1, 16, 43 L. ed. 873, 878, 19 Sup. Ct. Rep. 580. The 7th Amendment secures the right to a trial by jury, and unanimity is one of the peculiar and essential features. Whatever may be true as to legislation which changes mere details of a jury trial, it is clear that a statute which destroys a substantial and essential feature thereof abridges the right. American Pub. Co. v. Fisher, 166 U. S.

464, 468, 41 L. ed. 1079, 1081, 17 Sup. Ct. Rep. 618. Whatever may be the supposed disadvantages of requiring unanimity, it has nevertheless always been required. Forsyth, Trial by Jury, chap. XI. "Congress in legislating for the territories would be subject to those fundamental limitations in favor of personal rights which. are formulated in the Constitution and its amendments; but these limitations would exist rather by inference, and the general spirit of the Constitution from which Congress derives all its powers than by any express and direct application of its provisions." Church of Jesus Christ, L. D. S. v. United States, 136 U. S. 1 & 44, 34 L. ed. 478, 491, 10 Sup. Ct. Rep. 792, per Mr. Justice Bradley. In legislating for Porto Rico, which legislation, however, has been held not to incorporate Porto Rico as a territory with the United States, Congress provided this district court of the United States for Porto Rico, and gave it jurisdiction of all cases cognizable in the court of the United States, and directed that it should proceed in the same manner. Act of March 2, 1917, § 41. The court was attached to the first circuit, and the act provided the qualifications of jurors selected to serve in that court. § 44. Not only is there a general provision that statutory laws of the United States not locally inapplicable shall have the same force and effect in Porto Rico as in the United States (§ 9), but that juries are to be selected, drawn and subject to exemption in accordance with the laws of Congress regulating the same in the United States courts so far as locally applicable.

It is provided in Revised Statutes, § 914, Comp. Stat. 1916, § 1537, as follows: The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and

Martinez v. Valdes.

modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding.

The difficulty, however, as to juries is that, even if Porto Rico is to be considered a state for the purposes of this section, there is no civil jury in the local courts, and there is no practice to be followed. This would seem to be covered by Revised Statutes, § 918, Comp. Stat. 1916, § 1544, which is as follows: "The several circuit and district courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the Supreme Court under the preceding section, make rules and orders directing the returning of writs and processes, the filing of pleadings, the taking of rules, the entering and making up of judgments by default, and other matters in vacation, and otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

Does the rule of this court now in question, as construed above to make the sealed verdict final upon the adjournment of the jury for the night, violate any of these legal provisions? In other words, as expressed in the Fisher Case, does this take away a substantial and essential feature of jury trial, or is it a change of a mere detail of a jury trial?

The essence of a jury trial is the determination of questions of fact from evidence produced before them under the direction of the judge of the court. A rule which provides that a jury after such trial shall retire and deliberate, and may upon agreement deliver their written verdict to the marshal and report the same at the next meeting of court, cannot be said to violate

any substantial part of the right to a jury trial. It is not a substantial and essential part of that right that a jury be permitted to separate, and be subjected to outside influences not connected with the evidence testified on the stand under the supervision of the judge, and then come back and announce a change of mind, any more than it is of the essence of that right that after a verdict is filed in open court a juror may go out and, under similar circumstances, some back and seek to change the verdict which he has already rendered. Such a course does not aid, but destroys, the substantial and essential part of the right to a jury trial and cannot be permitted.

The result, therefore, is that the verdict in this case, which was signed and left with the marshal and afterwards filed with the court, was not subject to dissent by a juror for any cause occurring after the jury left the custody of the marshal, and the motion to set aside the verdict and to enter a mistrial is denied.

It is so ordered.