447 A.2d 234

**COMMONWEALTH of Pennsylvania, Cross-Appellant,**

v.

**Charles J. GOLDBLUM, Appellant.**

Supreme Court of Pennsylvania.

Argued May 19, 1982.

Decided July 2, 1982.

Reargument Denied Dec. 9, 1982.

458

Charles F. Scarlata, Scarlata & DeRiso, Pittsburgh, Rodney F. Page, Howard V. Sinclair, Joseph E. Sandler, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kemal Alexander Mericli, Asst. Dist. Atty., Pittsburgh, for cross-appellant.

Before O'BRIEN, C. J., and ROBERTS, NIX, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On August 30, 1977, Charles J. "Zeke" Goldblum, was convicted by a jury of murder of the first degree, conspiracy to commit theft by deception, solicitation to commit arson, and arson. Post-trial motions were denied and judgments of sentence were imposed in which Goldblum was sentenced to life imprisonment for the murder conviction and consecutive sentences on the other convictions. The Superior Court, at Special Transfer Docket Nos. 25 and 26, before Judges Van der Voort, Lavelle, and Mr. Justice Larsen (who did not participate in the decision), affirmed all convictions except the conviction on the conspiracy charge, which they reversed, granting a new trial on the conspiracy count, 287 Pa.Super. 544, 427 A.2d 258. Goldblum now challenges the

affirmance of the convictions for murder, solicitation to commit arson, and arson, and the Commonwealth cross-appeals the Superior Court's reversal of the conspiracy conviction. For the reasons that follow, we affirm all convictions, and reverse the Superior Court's reversal of the conspiracy conviction.

A brief summary of the pertinent facts of the case is: Goldblum and Clarence Miller conspired to defraud George Wilhelm by selling him land in North Carolina owned by the United States Government. The fraud was made plausible by the facts that Miller and Wilhelm were friends and Wilhelm believed that Miller had political connections which might make such a sale of government land possible. Wilhelm paid the conspirators twenty thousand dollars in cash for this land, but later discovered that he had been defrauded and told the FBI that a fraud had been perpetrated by a person posing as the aide of United States Senator Schweiker of Pennsylvania. Goldblum and Miller persuaded Wilhelm to withdraw the statement he made to the FBI, telling Wilhelm to claim that his complaint was a political ruse, and promised to return the money paid for the land in North Carolina. Wilhelm and Miller thereafter submitted an affidavit to the FBI claiming that Wilhelm's complaint was a ruse. The money to repay Wilhelm, however, was not readily available, and in order to raise money, Wilhelm agreed with Goldblum to participate in a scheme to defraud an insurance company which insured a restaurant owned by Goldblum. The plan was for Wilhelm to set fire to Goldblum's restaurant, for which he was to be paid $3,500.00 in addition to the money taken from him on the land scheme. Subsequently, the restaurant was totally destroyed by fire. However, Goldblum paid Wilhelm only $100.00 of the money owed, and Miller told Goldblum that Wilhelm was threatening to go to the authorities if he was not paid. Goldblum then arranged for Miller to bring Wilhelm to a restaurant in downtown Pittsburgh, where Goldblum told Wilhelm that if Wilhelm would drive them to the roof of the Seventh Street parking garage, Wilhelm would get his money. When they

arrived on the roof of the parking garage, Goldblum struck Wilhelm on the head with a wrench, and then stabbed him repeatedly. When police found Wilhelm bleeding to death, he told them, "Clarence... Clarence Miller did this to me." As a result of this statement, Miller was arrested and he in turn implicated Goldblum.

## I. After-Discovered Evidence.

Goldblum requests a new trial based on a claim of after-discovered evidence which Goldblum argues renders his co-defendant Miller, the Commonwealth's chief witness, testimonially incompetent. Prior to his trial, Goldblum requested the trial court require Miller's submission to an impartial psychiatric examination on the theory Miller's personality and mental condition were relevant to the jury's determination of credibility. The trial court denied this request. Subsequently, in his own trial, Miller presented Dr. Van Cara, a clinical psychologist, and Dr. Merikangas, a psychiatrist, in support of Miller's claim that his confession was involuntary. These witnesses supplied evidence that as a youth Miller had suffered organic brain damage resulting in below average intelligence and ability to recall which manifest themselves in confabulation, involuntary supplementation of gaps in memory by fabrication which the relater believes to be the truth. It is this evidence on which Goldblum bases his claim of after-discovered evidence. After taking his direct appeal Goldblum twice petitioned this Court to remand for an evidentiary hearing to explore the question of Miller's *competence* to testify. This Court, while retaining jurisdiction, granted Goldblum's petition on January 19, 1981.

Relying on *Commonwealth v. Garcia*, 478 Pa. 406, 426, 387 A.2d 46, 56 (1978) (two Justices joining in the opinion and two Justices concurring in the result), the Commonwealth argues Drs. Merikangas and Van Cara were incompetent witnesses on remand on the theory their testimony concerned confidential communications between a psychologist (and, by extension, a psychiatrist) and client and,

thus, were privileged. The legislature has provided a privilege for confidential communications between a client and psychologist: "The confidential relations and communication between a psychologist and his client are on the same basis as those provided by law between an attorney and client...." Act of March 23, 1972, P.L. 136, No. 52, § 13, 63 P.S. § 1213, since repealed, but substantially reenacted in the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 5944. Between an attorney and client the privilege is confined to confidential communications, and does not exist as to those communications which "to subserve the interests of the client [were] publicly disclosed by direction of the client himself, on the trial of his cause." *Levers v. Van Buskirk*, 4 Pa. 309 (1846). *See also, Kramer v. Kister*, 187 Pa. 227, 232, 40 A. 1008 (1898). Instantly, the testimony complained of concerned communications made by Miller for the very purpose of future disclosure by these witnesses at Miller's own trial. The communications were not made in confidence, that is, Miller had no expectation they would be kept in confidence; and much of this testimony had already been publicized at Miller's trial. In short, the communications were not privileged and there is no merit to the Commonwealth's claim.

 A determination of testimonial competency rests in the sound discretion of the lower court. *Commonwealth v. Ware*, 459 Pa. 334, 356, 329 A.2d 258, 269 (1974). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record, discretion is abused." *Commonwealth v. Moyer*, 497 Pa. 643, 647, 444 A.2d 101, at 103 (1982). The burden of proving incompetency rests on the party opposing the witness, *Commonwealth v. Ware, supra.* The lower court found Goldblum failed to meet his burden of proving Miller's incompetency. There has been no abuse of discretion in this case.

■ In order to be testimonially competent, a witness must have the ability to (1) perceive the event with a substantial degree of accuracy, (2) remember it and (3) communicate about it intelligibly (4) mindful of his duty to tell the truth under oath. Testimony produced at the evidentiary hearing supports the conclusions Miller is able to perceive events and his ability to frame and express answers to questions falls in the low normal range. The charge Miller confabulates bears directly on conditions (3) and (4); however, the doctors were unable to agree about the effects of confabulation. Dr. Merikangas' testimony that confabulation is "made for the moment" and, therefore, "repeating exactly the same story on all subsequent examinations would be inconsistent with confabulation" contradicted Dr. Van Cara. Dr. Merikangas' testimony that Miller "lacks very much consciousness of the duty to speak the truth" contradicts Dr. Van Cara's testimony that Miller was aware of his duty to speak the truth. Both doctors agree that at any given time Miller could be capable of consciously lying, unconsciously lying (confabulating) or telling the truth. These conclusions were based on their professional judgments, but neither expert could say with any certainty whether Miller actually told an untruth at any specific time.

Due to the dearth of records to substantiate Dr. Merikangas' testimony regarding confabulation and the fact that these experts contradicted their own prior testimony at Miller's trial as well as each other's testimony during the hearing, Goldblum was unable to convince the lower court that Miller was incompetent. There is nothing in the record to suggest the lower court acted arbitrarily in rejecting Goldblum's theory, and in concluding the doctors' testimony impugns Miller's credibility only.

■ After-discovered evidence will not form a basis for a new trial if it merely impeaches the credibility of a witness. *Commonwealth v. Giacobbe*, 341 Pa. 187, 197–98, 19 A.2d 71, 76 (1941). Thus, Goldblum's claim of after-discovered evidence cannot form the basis for a new trial.

II. Sufficiency of the Evidence.

██ Goldblum asserts the evidence is insufficient to support the convictions. As we have often stated, the test of sufficiency of evidence in a criminal case is whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, it is sufficient to enable the trier of fact to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Cristina*, 481 Pa. 44, 49, 391 A.2d 1307, 1309 (1978).

In this case Miller testified that he saw Goldblum kill Wilhelm. This direct evidence was corroborated by other evidence linking Goldblum to the land fraud scheme; evidence establishing an association with Wilhelm months in advance of the killing (consistent with involvement with the land fraud scheme and contrary to Goldblum's contention that he met Wilhelm only the day before the killing); evidence from Goldblum himself that no insurance proceeds were collected on the burned building and restaurant (consistent with his not having paid Wilhelm); and, finally, evidence that after Miller implicated Goldblum in Wilhelm's murder, Goldblum wanted to kill Miller (consistent with Goldblum's consciousness of guilt in the Wilhelm murder).

 A jury may convict even on the uncorroborated testimony of an accomplice. *Id.*, 481 Pa. at 51, 391 A.2d at 1311. Goldblum's contention, therefore, is not that this evidence is insufficient, since Miller's testimony alone would be enough to convict, but that Miller's testimony must be omitted from consideration because of internal irreconcilable contradictions, leaving the conviction supported by only independent circumstantial evidence, which in this case would have been inadequate to sustain the conviction. In the *Cristina* case we stated:

> [W]here evidence offered to support guilt of a crime is so unreliable and/or contradictory as to make a verdict based thereon pure conjecture rather than the product of reasonable reconciliation, an appellate court is justified in concluding that it was reversible error to allow the jury to

return a guilty verdict based thereon. See *Commonwealth v. Farquharson*, [467 Pa. 50, 354 A.2d 545 (1976)]; *Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973).

481 Pa. at 51, 391 A.2d at 1310. The contradictions Goldblum relies on are discrepancies between information Miller gave police when he was arrested and his testimony at trial. Goldblum's reliance on contradictions between Miller's out-of-court statements and his in-court testimony is misplaced, for such discrepancies concern credibility and do not render impossible rational consideration of the evidence presented. A new trial may be appropriate in a case where the testimony *at trial* is hopelessly contradictory, but in this case Miller's testimony at trial was consistent. Appellate courts reverse convictions based upon unreliable or contradictory evidence in order to prevent the verdict from being based upon mere conjecture "rather than the product of reasonable reconciliation." Such a purpose would not be served by removing evidence from the jury's consideration merely because it was challenged by the defense as to its credibility. The evidence was sufficient to sustain the verdict.

### III. Hearsay.

██ Goldblum's third contention is that the Superior Court erred in failing to hold that the trial court committed prejudicial error in admitting hearsay statements of the decedent and that the Superior Court erred in holding that Goldblum failed to preserve his objections to certain hearsay statements. It is axiomatic, of course, that this Court will review only those alleged errors which have been properly preserved for appellate review, i.e., errors which have been raised *specifically* in written post-trial motions made pursuant to Pa.R.Crim.P. 1123(a). *Commonwealth v. Hagans*, 483 Pa. 415, 397 A.2d 412 (1979); *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

██ That portion of the written post-trial motions which preserves the hearsay issue for appeal is as follows:

The Court erred in receiving hearsay statements of the deceased, particularly those statements purportedly made to William Hill, President of the Fraternal Association of Steel Haulers, wherein the deceased allegedly indicated that the accused was an attorney involved in the victim's purchase of land in North Carolina.

On its face this writing preserves objection to statements the deceased made to William Hill concerning Goldblum's involvement in the land purchase scheme. If the writing were read to preserve objection to every hearsay statement in the record, this Court would be required to examine more than 3,000 pages of testimony for the occurrence of hearsay statements of the deceased to which there was an objection made at trial. Neither Rule 1123(a) nor our decisions interpreting that rule contemplate such a shotgun approach to appellate advocacy. Goldblum's claim, therefore, is without merit.

The testimony which has been properly preserved for appellate review, William Hill's testimony that Wilhelm had mentioned Goldblum's name at various times during 1975, follows:

Q. Going back then to any time prior to February 9th [1976], do you recall in what connection George Wilhelm mentioned Zeke Goldblum, as being an attorney, a tax accountant, and in what connotation did he talk about him? What was the reason for bringing his name up?

A. When he would speak of this land that he had.

Q. In North Carolina?

A. Yes.

\* \* \* \* \* \*

Q. Can you tell us, please, what it was that he told you that Zeke Goldblum had to do with the North Carolina property?

A. He never got into much detail about that property, and I would never really question him much on it, because it just seemed that he never wanted to talk

that much about it, but he would—he always told me, when he would talk about the property, "Don't tell anybody, it's in confidence what I'm telling you about this property deal." That's all I know about it.

Q. You mentioned previously that when he did mention Zeke Goldblum, he was—it was in some way connected with the North Carolina property?

 * * * * * *

A. That's usually when he would bring this Zeke and Clarence [Miller]—well, Zeke into the conversation then, yes.

■ The testimony is admissible as circumstantial evidence of declarant's knowledge of a particular fact. Here, the statements made by the declarant (Wilhelm) to a third person (Hill) are admissible because they were relevant to the disputed issue of declarant's acquaintance with Goldblum. See McCormick, Handbook of the Law of Evidence § 249 at pp. 591–92 (Cleary, ed., 1972); II Wigmore on Evidence § 266 at p. 97 (Chadbourn rev. 1979) ("A's mention of Charles the Great . . . is some evidence that he knows or is aware of the existence of such a person").

IV. Ineffectiveness of Trial Counsel.

Goldblum next argues (1) if statements of the deceased testified to by Miller were properly admitted, it was ineffective for trial counsel not to have requested limiting instructions; (2) if trial counsel is found not to have preserved his objections to the introduction of deceased's statements to Miller, he was ineffective in not preserving them; (3) trial counsel was ineffective in failing to object to prejudicial statements made by the prosecutor.

As to the first of these allegations, trial counsel in fact did not request limiting instructions as to the testimony of Miller that Wilhelm said that Goldblum promised Wilhelm money to set fire to Goldblum's restaurant and that he, Wilhelm, had done so. Miller also testified to other statements of Wilhelm which, if believed, established that Gold-

blum was responsible for the fire in the restaurant and was involved in the North Carolina land scheme. (This testimony was not discussed with the hearsay claims because objection to its admission was not properly preserved for appellate review. It is discussed here only for the purpose of considering the ineffectiveness claim.)

Like the testimony of Hill, this testimony established that the victim had been acquainted with Goldblum. Furthermore, the statements of Wilhelm as to his part in the arson are declarations against penal interest, and are admissible for that reason. Thus, the Miller testimony was admissible.

Our standard of review on the question of counsel's ineffectiveness, of course, is articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–605, 235 A.2d 349, 352 (1967):

> [O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interest. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

(Emphasis in original). In the present case, trial counsel reasonably chose not to seek a limiting instruction in that such an instruction, even though proper, would have tended to confuse the jury.

The second allegation of ineffectiveness is that if trial counsel is found not to have preserved for appellate review his objections to the introduction of these statements to Miller, he was ineffective in not preserving them. Since we have just held that these statements were admissible, it would have been fruitless for counsel to have preserved his objection to their admission. As this Court stated in *Com-*

*monwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977): "Because counsel does not forego an alternative which offers a substantially greater potential for success when he fails to assert a baseless claim, counsel cannot be found to have been ineffective for failing to make such an assertion." Because the claim (objection to the admission of Miller's testimony reciting statements made by Wilhelm) was baseless, counsel cannot be found to be ineffective for failing to preserve the objections for appellate review.

The third allegation of ineffectiveness is that trial counsel was ineffective in failing to object to prejudicial statements made by the prosecutor during his closing argument. The statements at issue are alleged to contain the prosecutor's own characterization of Goldblum's character and expression of disbelief of Goldblum's testimony. The statements claimed as warranting a mistrial are:

> What [Goldblum] cares about is Charles Goldblum and anything or anybody that comes into conflict with what is good for Charles Goldblum is going to be eliminated one way or another, and so with apparently no difficulty whatsoever he sets about to plan the execution of a human being . . . .

> \* \* \* \* \* \*

> Charles Goldblum never came forward and frankly admitted that he even was responsible for that [solicitation to kill Miller]. It tells us something at the very outset. If we are going to talk about credibility it tells us something about Charles Goldblum. That he could not bring himself to tell the absolute truth even if things were so plainly proved from the witness stand that there isn't any controversy about them.

■ The evidence established that Goldblum planned to defraud Wilhelm of money in the North Carolina land scheme, participated in the fraud, and received money from the fraud. Further, the evidence proved that Goldblum planned and actually carried out the scheme to burn his own restaurant to obtain insurance money. The evidence also indicated that Goldblum was a co-actor in the murder of

Wilhelm. Finally, the evidence indicated that Goldblum attempted to hire an assassin to kill Miller, the Commonwealth's chief witness. Goldblum took the stand and denied culpability in the land fraud scheme, Wilhelm's murder, and the arson. Goldblum admitted soliciting an undercover police officer to kill Miller, but denied that the plan was definite, insisting that he might have changed his mind before the killing actually occurred. From this evidence, it is a fair inference that Goldblum did not, in fact, have much difficulty in planning the execution of other human beings. It is also a fair inference from the evidence that Goldblum definitely planned to have Miller killed and that his denial of this plan affected his credibility as to the other denials. Counsel's summary remarks, thus, were not improper, and trial counsel was not ineffective in failing to object to them.

Goldblum's ancillary claim that the prosecutor improperly identified himself with the jury by reference to what "we" believe is of no merit.

V. Private Prosecution.

■ Goldblum argues the trial court erred in declining to permit the private prosecution of Miller for perjury, false swearing and unsworn falsification. Miller testified at Goldblum's preliminary hearing that he and Wilhelm had previously given the F.B.I. a false affidavit that the land fraud had been a hoax and in fact had never happened. Goldblum sought an adjudication that Miller had committed perjury, on the theory the conviction would render Miller incompetent to testify under the Disqualification Act of May 23, 1887, P.L. 158, § 2(a), as amended, 19 P.S. § 682, then in effect and, accordingly Goldblum swore out a private criminal complaint against Miller. When the District Attorney refused to approve this complaint, Goldblum sought approval of the complaint in Common Pleas Court. That court affirmed the decision of the District Attorney, and, on appeal from this order, the Superior Court affirmed without opinion. *Commonwealth v. Miller, Appeal of Goldblum,* 244 Pa.Super. 613, 371 A.2d 1299 (1977). This Court denied

allocatur. This issue has been fully and finally litigated on appeal. We decline to again consider the issue in this proceeding.

## VI. Evidence of Other Crimes.

■ Goldblum assigns as error admission of evidence he had agreed to pay an undercover police officer $2,000 to kill Miller. This claim is without merit. The evidence was admitted, not, as Goldblum asserts, to disparage him and inflame the jury by proof of other crimes, but as an admission by conduct of evidence of his consciousness of guilt, and, on this record its admission as such was proper. *See,* *McHugh v. McHugh,* 186 Pa. 197, 201–203, 40 A. 410 (1898) (evidence defendant had attempted to procure false testimony and influence jurors admissible as tending to show the party was conscious her cause was an unjust one); *Cover v. Commonwealth,* 5 Sadler 79, 8 A. 196 (1887); (evidence defendant tried to deter witnesses from testifying by means of threats, promises and vindictive prosecution held admissible); *Commonwealth v. Klick,* 272 Pa.Super. 61, 66–67, 414 A.2d 669, 672 (1979) (evidence defendant threatened to kill witness if she testified admissible); *Commonwealth v. Kramer,* 247 Pa.Super. 1, 8, 371 A.2d 1008, 1011 (1977) (Commonwealth may show attempt by defendant to intimidate its witnesses); McCormick, *Evidence,* § 273 (2d ed. 1972). Goldblum's conduct was directly related to the crimes and issues on trial, and its probative value warranted its admission. The trial court did not abuse its discretion in admitting this testimony.

## VII. Indictment.

The Commonwealth appeals the Superior Court's holding that trial counsel was ineffective in not moving to quash the indictment alleging conspiracy to commit theft by deception. The indictment in question failed to allege that any overt acts of the conspiracy occurred in the county of the court assuming jurisdiction over the case, here Allegheny County, as is required under Pa.R.Crim.P. 213(a)(4). The Superior

Court reasoned that the trial court could not take jurisdiction over the case unless an overt criminal act occurred within the court's jurisdiction, and since the accused waives his right to question insufficiencies in the indictment if he does not object before trial, *Commonwealth v. Brown*, 229 Pa.Super.Ct. 67, 323 A.2d 845 (1975), counsel was ineffective in not objecting to the court's jurisdiction and moving to quash the indictment. This conclusion, however, of necessity rests on the assumption that the defect in the indictment was a substantive defect and could not have been cured by amendment.

The test for the substantive sufficiency of an indictment is that it must notify the defendant of the charge he has to meet. *Commonwealth v. Petrillo*, 338 Pa. 65, 12 A.2d 317 (1940). Indictments defective in form, however, may be amended pursuant to Pa.R.Crim.P. 220:

> The court may allow an indictment to be amended *where there is a defect in form*, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense. Upon amendment the court may grant such a postponement of trial or other relief as is necessary in the interests of justice.

(Emphasis added). As the Superior Court stated in *Commonwealth v. Bruce*, "if the defect [in an indictment] is one of form, it can be amended." (formal statements in the indictment as to time, place, value, and name of the accused are open to amendment). 230 Pa.Super.Ct. 507, 509–510, 326 A.2d 628, 629 (1974). The question in the present case, therefore, is whether the defect in the conspiracy indictment, that it did not allege that overt acts occurred in the County of Allegheny, was a defect of substance or form. We disagree with the Superior Court's implicit holding that the defect in the indictment was substantive and that venue was not properly laid within Allegheny County, thus depriving the trial court of jurisdiction.

In *Commonwealth v. Little*, 455 Pa. 163, 168, 314 A.2d 270, 273 (1974) this Court stated that to invoke the subject matter jurisdiction of the trial court:

[I]t is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction. The right to formal notice of charges, guaranteed by the Sixth Amendment to the federal Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court.

The Constitutional requirement that subject matter jurisdiction requires adequate notice of charges does not in this case conflict with our conclusion that an amendment to the indictment alleging that criminal acts occurred in Allegheny County would be an amendment of form, not substance. The indictment specified with particularity the names of the conspirators, the nature of the conspiracy, the name of the victim of the conspiracy, the amount of money allegedly obtained as a result of the conspiracy, and dates or approximate dates of various meetings. Had the indictment been amended to allege that an overt act in furtherance of the conspiracy occurred in Allegheny County, an additional or different offense would not have been charged by the amendment and Goldblum would not have been better able to prepare a defense.

■ Subject matter jurisdiction in the trial court exists by virtue of presentation of prima facie evidence that a criminal act occurred within the jurisdiction of the court. Such evidence was presented. Had it not been, trial counsel could well have been ineffective had he not challenged the subject matter jurisdiction of the court. Where counsel could predict, however, that upon a motion to quash the

indictment, the Commonwealth would simply amend the indictment to add that an overt act occurred in Allegheny County, counsel is not ineffective for failing so to have moved.

Accordingly, the Superior Court's reversal of the judgment of sentence on the conspiracy charge is reversed. Judgments of sentence on all charges are affirmed.

NIX, J., concurs in the result.

LARSEN, J., did not participate in the consideration or decision in this case.