## Russell v. Commercial Union Insurance Co.

*Dale E. Anstine* and *James A. Nettleton Jr.,* for plaintiff.

*Walter A. Tilley III,* for defendant.

CASSIMATIS, *J.,* March 21, 1991 — This matter is before the court pursuant to the motion of defendant, Commercial Union Insurance Company, to compel discovery of psychological and psychiatric records of plaintiff, DeEtta D. Russell. For the reasons set forth below, the motion of defendant is granted in part and denied in part.

The relevant facts are as follows. On April 4, 1988, plaintiff was involved in an automobile accident which resulted in personal injuries. At the time of the accident, plaintiff was insured under an insurance policy with defendant (as stated in the answer of defendant, the insurer is the Northern Assurance Company of America, a principal operating company of defendant). Following the accident, plaintiff gave timely notice to defendant of the accident and completed and sent to defendant an application for benefits.

Plaintiff initially was treated by Hugh E. Palmer, D.O. on April 25, 1988 and again on May 9 and May 23, 1988. On May 25, 1988, plaintiff began treatment with York Physical Therapy Center, and was also treated by Roy Ysla, M.D., a physical medicine specialist. Plaintiff was subsequently admitted to the Rehab Hospital of York by Dr. Ysla on August 24, 1988 for persistent neck and back pain, allegedly resulting from the automobile accident. Plaintiff was discharged from the Rehab Hospital on September 16, 1988 and on September 30, 1988 was admitted to

the psychiatric unit of Memorial Hospital where she remained until November 7, 1988. The final diagnosis from Memorial Hospital was "major depression with psychotic features."

Defendant, upon receipt of plaintiff's medical bills for her hospitalization at the Rehab Hospital of York, determined that an independent medical review was necessary and contracted the services of Ellis F. Friedman, M.D. Dr. Friedman concluded that he could find no justification for the plaintiff's stay at the Rehab Hospital of York, and as a result, defendant denied payment of the charges for the treatment at the Rehab Hospital and submitted a copy of the report to counsel for plaintiff.

Louis D. Poloni, Ph.D., director of the "incentives" program at the Rehab Hospital, and Roy Ysla, M.D., responded to defendant with explanations for the reasonableness and necessity of plaintiff's treatment. Dr. Friedman was provided with the above response, but did not change his opinion that plaintiff's treatments were not reasonable and necessary and accident-related. Defendant also engaged the services of a psychiatrist who stated that it will be necessary for him to review plaintiff's psychiatric records to reach a definitive conclusion as to the cause of plaintiff's pain. The psychiatrist further reported that the condition diagnosed by Memorial Hospital, major depression with psychotic features, is not one that occurs suddenly and that it appears from the notes of treatment from the Rehab Hospital that plaintiff's reports of pain are actually a physical manifestation of plaintiff's mental illness.

Following the final denial of payment of the plaintiff's medical bills in relation to her treatment at the Rehab Hospital, plaintiff filed suit in this action on May 23, 1989. The issue in this lawsuit is whether plaintiff's medical expenses, specifically those in

conjunction with her admission to the Rehab Hospital of York, are reasonable and necessary and related to the automobile accident in which plaintiff was involved, thus imposing a duty on defendant as plaintiff's first-party benefit carrier to pay for said benefits under the Pennsylvania Motor Vehicle Financial Responsibility Law. Defendant attempted to obtain copies of the psychological and psychiatric records voluntarily by having plaintiff sign a consent to their release. Plaintiff, by her counsel, responded that she would not sign the release, concluding that the psychiatric and psychological information is privileged pursuant to 42 Pa.C.S. §5944. The present issue is whether defendant will be permitted access to plaintiff's psychiatric and psychological records in order to prepare its defense.

The statute, 42 Pa.C.S. §5944, entitled "Confidential communications to psychiatrists or licensed psychologists," states:

"No psychiatrist or person who has been licensed under the Act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an *attorney and client.*" 42 Pa.C.S. §5944.

"Formerly, this privilege applied only to persons licensed to practice psychology, though it had been contended that psychiatrists should be treated similarly. In 1989, the statute was amended to include psychiatrists." *Pennsylvania Evidence,* Packel and Poulin, at 325-6.

The attorney-client privilege is governed by 42 Pa.C.S. §5928 and states:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

"[T]his general rule has several well-established exceptions. A communication between an attorney and his client is not privileged if (1) it takes place in the presence of a third person or of the adverse party. . ." *Loutzenhiser v. Doddo,* 436 Pa. 512, 518-9, 260 A.2d 745, 748 (1970).

We have been unable to find any case law applicable and directly on point with the facts of this case in which a defendant insurance company requests that psychiatric and psychological records of the plaintiff be released where the plaintiff is not making a claim for emotional trauma/distress. However, in the case of *Adoption of Embick,* 351 Pa. Super. 491, 506 A.2d 455 (1986), the Superior Court explained the rationale for the privilege:

"At this point we should observe that the range of applicability of Pennsylvania's psychologist-client privilege has been defined as being the same as the attorney-client privilege. In *Commonwealth v. Goldblum,* 498 Pa. 455, 464, 447 A.2d 234, 239 (1982), our Supreme Court said: 'Between an attorney and client, the privilege is confined to confidential communications. . ..'

"There can be no doubt that the purpose of the psychologist-client privilege is to encourage people to seek professional help for their mental or emotional problems, and that purpose is best accomplished when people in need of psychotherapeutic

treatment know that what they tell their therapist during treatment will not be disclosed to anyone.

"[T]he analysis suggested by Dean Wigmore would compel the conclusion that the statutory psychologist-client privilege must yield to disclosure of the communications under the facts of this case. Wigmore said that four criteria must be satisfied to justify an evidentiary privilege: (1) the communications must originate in the confidence that they will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relationship between the parties; (3) the relationship must be one which, in the opinion of the community, ought to be sedulously fostered; and (4) the injury that would inure to the relationship by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation. Wigmore, *supra,* §2285." *Adoption of Embick, supra.*

"[F]our fundamental conditions cited above are recognized as necessary to the establishment of a privilege against the disclosure of communications. Only if these four conditions are present should a privilege be recognized. These four conditions must serve as the foundation of policy for determining all such privileges, whether claimed or established." Wigmore, §2285.

In the case at bar, defendant argues that plaintiff cannot establish that she meets the fourth criterion to satisfy the evidentiary privilege; specifically, there can be no injury to the relationship by the disclosure of the communication, since the relationship with the Rehab Hospital terminated when plaintiff was discharged on September 16, 1988. Further, defendant argues that there is a substantial factual question as to whether the treatment received by plaintiff was in fact related to the automobile acci-

dent, or whether it was related to her psychological condition. Therefore, there is a substantial benefit to be gained by the disclosure of the information in order to permit the correct disposal of the litigation.

Defendant further argues that under the circumstances of the case, plaintiff has placed her mental condition at issue by demanding payment for "psychological services." In *Farrell v. Glen-Gery Brick,* 678 F.Supp. 111 (E.D. Pa. 1987), the plaintiff claimed sexual harassment at work and sued for emotional distress, the court holding that the plaintiff waived her right of privacy in psychiatric and psychological records when she placed her mental condition in issue by filing an intentional infliction of emotional distress claim.

"As to a constitutional right of privacy for confidential communications to one's psychiatrist, plaintiff refers to the Pennsylvania Supreme Court decision, *In re 'B,'* 482 Pa. 471, 394 A.2d 419 (1978). '[A]n individual's interest in preventing the disclosure of information revealed in the context of the psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and . . . the patient's right to prevent disclosure of such information is constitutionally based.' *In re 'B'* at 484, 394 A.2d at 425.

"Nevertheless, 'the protection provided by the right of privacy is not absolute.' *In re Search Warrant,* 810 F.2d 67 (3d Cir. 1987). The 'right of privacy as to plaintiff's personal history that a plaintiff may otherwise have must be balanced against the defendant's right to a fair trial.' *Lowe v. Philadelphia Newspapers Inc.,* 101 F.R.D. 296, 298 (E.D. Pa. 1983). Notably, both courts and commentators alike have consistently taken the view that when a party places his or her mental or physical condition at issue the privacy right is waived. *Miller,*

81 F.R.D. at 745. As one article observes: 'Important fairness considerations justify this exception: an individual who wishes to receive the benefits of the judicial system should not be allowed to impose an additional burden on the system by withholding necessary information central to her claim.' Note, Developments in the Law—Privileged Communications, 98 Harv. L. Rev. 1450, 1554 (1985)." *Farrell, supra* at 112-3.

In response, plaintiff argues that a quick summary of the various expenses which plaintiff incurred at the Rehab Hospital demonstrates that the charges for psychological care which included 11 group therapy sessions, six individual therapy sessions, four biofeedback sessions, and a pain-control workbook, are a mere 8 percent of the total medical expenses which defendant has refused to pay. Plaintiff asserts that this illustrates that the purpose of her admission to the Rehab Hospital was not for psychological care, but was rather for overall rehabilitation and treatment of the chronic pain from which she suffered. Also, in a letter to defendant from Dr. Roy Ysla (plaintiff's treating physician), Dr. Ysla states that in any pain-management program, psychological counseling in the area of stress reduction is a necessary part and parcel of the overall treatment. If this is the case, that psychological and psychiatric records are a necessary component to any pain-management program, then the records requested by defendant would be directly related to pain-management issues, not an unrelated mental health issue. Following this argument, the four criteria set forth in the *Embick* case, which are to be met to satisfy an evidentiary privilege, would be very difficult to establish.

The case of *Commonwealth v. Kyle,* 367 Pa. Super. 484, 533 A.2d 120 (1987), cited by plaintiff,

addresses the statutory privilege for psychologists and clients and the interests it is protecting.

"Like the attorney-client privilege, the psychologist-client privilege protects an interest extrinsic from the truth-finding process . . . patient confidence is essential for effective treatment. . ..

"The statutory privilege for psychologists and clients also serves to protect another interest as well: the privacy interest of the client . . . this privacy interest is not without significance. Indeed, it has been suggested that the privacy interest of the client may have constitutional underpinnings. . ..

"The privilege afforded by section 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist. By preventing the latter from making public any information which would result in humiliation, embarrassment, or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure.

"The issue to be decided, however, is whether the public interests supporting the psychologist-client privilege outweigh an accused's interest in reviewing arguably useful information protected by the privilege." *Kyle, supra.*

See also, *Miller v. Roberts,* 38 D.&C. 3d 74 (1985): "The right of privacy is not absolute. Thus, the appellate courts of the Commonwealth have recognized that the individual's right to privacy must be balanced against the interests that would be served by disclosure of the communications." *Miller* at 83.

Defendant is requesting that the Rehab Hospital of York produce all of the psychiatric and psychological records pertaining to plaintiff during her stay at the hospital from August 24, 1988 to September

16, 1988. Similarly, defendant also requests the same records from Memorial Hospital which may apply to the mental condition of plaintiff from September 30, 1988 to November 7, 1988. Plaintiff has not made claim to defendant for payment of her psychiatric treatment at Memorial Hospital; therefore, the motion to compel discovery as to these records from Memorial Hospital is denied.

However, it is the conclusion of this court that plaintiff has placed her mental condition at issue by making claim to defendant for payment of her treatment at Rehab Hospital, and the extent of plaintiff's injury is at issue here. Part of her treatment at the Rehab Hospital was for psychological care and in balancing plaintiff's right to privacy as to these records against the interests of defendant and society as a whole, this court concludes that, to aid in the administration of justice, the records of the Rehab Hospital must be disclosed. Therefore, the motion to compel discovery of the records pertaining to the Rehab Hospital of York is granted.

Accordingly, we enter the following

## ORDER

And now, March 21, 1991, the motion to compel discovery by defendant, Commercial Union Insurance Company, is denied as to the records of Memorial Hospital and is granted as to the records of the Rehab Hospital of York. Plaintiff is hereby ordered to produce all relevant psychiatric and psychological records of the Rehab Hospital within 30 days.

The prothonotary is directed to provide notice of the entry of this opinion and order as required by law.