## Connors v. Dawgert

C.P. of Lackawanna County, no. 95 CV 4109.

*Daniel L. Thistle,* for plaintiffs.

*Jack Hartman,* for defendants Dawgert and Zukowski.

*Linda Porr Sweeney,* for defendant Mercy Hospital.

*Evan Black,* for defendant Geisinger Medical Center.

MINORA, *J.,* June 23, 1998—This matter is before the court by way of plaintiffs' motion to bar the defendants' expert. Suit in this medical malpractice case was instituted on August 30, 1995 to recover personal injuries on a cause of action which arose between the dates of May 24, 1985 and June 14, 1985.

A brief summary of the facts is as follows: As alleged in the complaint, minor plaintiff Michelle Connors was born on April 26, 1985. Relevant to this action, she was initially evaluated by defendants Dawgert and Zukowski at their office on May 24, 1985, following complaints of "twitching," "feeling poorly," and "not feeling well." She was examined by Dr. Dawgert, who detected signs of spinal meningitis. She was promptly admitted to Mercy Hospital.

As alleged, no viral cultures were taken at Mercy Hospital, and no medication for treating spinal meningitis was initiated. Bacterial cultures were obtained, and medication for bacterial spinal meningitis was started.

The plaintiff was transferred to Geisinger Medical Center on May 27, 1985. She received medical care from defendants Ryan and Wallace throughout this hospitalization. Spinal fluid viral cultures were obtained, with a diagnosis of viral meningitis made. Plaintiffs allege that the spinal fluid was not tested specifically for herpes virus, and no anti-viral medication was given.

It is alleged that the minor plaintiff developed static encephalopathy secondary to herpes encephalitis, manifested by partial paralysis, palsy, blindness, psychomotor delay, seizure disorder, and other conditions. Minor plaintiff is currently a resident of a long-term care facility, requiring continuous nursing care, ongoing medical attention and hospitalizations. She is described as being brain damaged and profoundly retarded.

Presently, the issue before this court is whether Pa.R.C.P. 4003.5 would preclude a defendant's expert witness from testifying where plaintiffs' counsel had previously contacted said witness. Relevant to this issue are the following facts: On April 15, 1996, counsel for defendants Geisinger Medical Center, Ryan and Wallace retained R.J. Whitley M.D. to render a medical opinion in this matter. On April 4, 1997, defense counsel identified Dr. Whitley as an expert pursuant to Pa.R.C.P. 4003.5. At that time, plaintiffs' counsel advised that he had previously contacted Dr. Whitley, allegedly forwarding information for the doctor's review in the form of a letter, setting out plaintiffs' attorney's mental impressions and personal theories. Plaintiffs' counsel stated that Dr. Whitley declined to act as plaintiffs' expert.

On June 9, 1997, at the direction of the court, Dr. Richard Whitley gave his testimony by deposition. The record reflects that Dr. Whitley repeatedly indicated that he had no recall of any contact, either by counsel for plaintiffs or anyone acting on counsel's behalf for the plaintiffs. Nevertheless, plaintiffs base their motion on the language of Pa.R.C.P. 4003.5(a)(3) alleging that Dr. Whitley is prevented from serving as defense expert following the alleged initial contact by plaintiffs' counsel.

Plaintiffs' motion to bar R.J. Whitley M.D. as an expert witness for defendants was filed on September 22, 1997. Defendants filed a response on September 29, 1997. Oral argument was heard before this court on October 3, 1997. At that time, all parties were requested to submit supplemental briefs in support of their positions due to the absence of Pennsylvania law on the subject.

The plaintiffs' motion is now ripe for disposition. The court notes this matter is apparently a case of first impression in this jurisdiction.

## DISCUSSION

The court is presented with the issue of whether a party's counsel who consulted with an expert, contemporaneously expressing an interest in possibly retaining him, but not doing so, is entitled to preclude the opposing party from utilizing the same expert's testimony based upon an asserted privilege or the attorney work product doctrine. Despite the expert's assertions that he has no recollection of the letter, or of any contact from plaintiffs' counsel, the plaintiffs argue that the letter constituted privileged communication that should serve to disqualify the witness. At the heart of the matter is the contention that confidential information was imparted to the expert in the form of mental impressions, theories or strategies.

According to the record of his deposition, Dr. Whitley testified that he receives approximately 60 to 80 telephone inquiries per year asking him to review cases and render an expert medical opinion. Out of the 60 to 80 requests, Dr. Whitley agrees to review two to three cases, as his time permits. Dr. Whitley further testified that he does not entertain requests from attorneys which are made by way of a request letter, and that it is his standard procedure to simply discard any unsolicited written request for his review. Dr. Whitley testified that he did not recall reviewing the July 17, 1995 letter from plaintiffs' counsel, nor does he have any recollection of any telephone conversation with counsel for plaintiffs or anyone acting on counsel's behalf for the plaintiffs. Finally, the doctor stated that he has reviewed his file and has no record of any correspondence from the plaintiffs.

I.

Our initial inquiry is focused on whether the plaintiffs' contact letter addressed to Dr. Whitley contained confidential information that would properly result in the disqualification of the defense expert. We agree with plaintiffs' assertion that mental impressions, theories and strategies of plaintiffs' counsel as revealed to an expert may serve as a proper basis for an expert's disqualification.

In our determination, we first find it instructive to compare the letter (which is attached hereto as "exhibit A") with the complaint drafted by plaintiffs' counsel. We note the following in reference to the July 17, 1995, contact letter

"Paragraph one—this paragraph introduces the case to the expert, and indicates that the infant should have been treated with 'acyclovir when all the signs and symptoms called for it.' This information is the basis for the complaint, and therefore we conclude that the information is not confidential in nature, since it appears in the publicly filed complaint.

"Paragraph two—this paragraph indicates the plaintiffs' counsel's familiarity with the expert's credentials, notifies the expert to the enclosed medical records, and offers a retainer if one is so required. This information refers to the doctor's expertise on the subject of the complaint and the availability of records, and therefore we conclude that the information is not confidential in nature.

"Paragraph three—this paragraph states that the case involves a 1-month-old female, born April 25, 1985, who was 'fine when discharged.' Further, the paragraph alleges that the baby's mother contacted the pediatrician on May 22, 1985; the pediatrician saw the baby on

May 24, 1985, recognized that the child potentially had spinal meningitis and admitted her to Mercy Hospital. This information is included in paragraph 13 of plaintiffs' complaint, and therefore we conclude that the information is not confidential in nature, as it is filed in the courthouse and therefore a matter of public record.

"Paragraph four—this paragraph states that Mercy did not do a viral culture. The paragraph further alleges that the plaintiff was admitted to Geisinger on May 27, 1985, where viral cultures were immediately ordered. On May 27, 1985, it was reported that the spinal fluid was unsuitable for viral cultures. Tracheal aspirate and nasopharynx cultures were done and were reported negative. This information is included in paragraphs 17, 19 and 20 of plaintiffs' complaint, and therefore we conclude that the information is not confidential in nature.

"Paragraph five—this paragraph states that Dr. Wallace was concerned about a possible herpes infection, but after consulting with an infectious disease physician, Dr. Ryan, decided not to administer acyclovir. Further, the paragraph alleges that no one recognized that the spinal fluid specimen was unsuitable until May 31, 1985, when a second culture was taken. The culture was reported back as negative. The hospital records indicate testing for coxsackie and echovirus, but not for herpes. This information is included in paragraphs 19 and 20 of plaintiffs' complaint, and therefore we conclude that the information is not confidential in nature.

"Paragraph six—this paragraph alleges that according to the medical charts, the baby's seizures were 'poorly controlled' by phenobarbital and phenytoin. This information is included in the medical records of the

plaintiff, which would be available to any expert retained by the defense, and therefore we conclude that the information is not confidential in nature, since it would have to be disclosed in the discovery process.

"Paragraph seven—this paragraph indicates that the child was discharged from the hospital and readmitted several times, and has done 'extremely poorly.' This information is included in the medical records of the plaintiff, and would be available to any expert retained by the defense, and therefore we conclude that the information is not confidential in nature, as it must be revealed during the discovery process.

"Paragraph eight—this paragraph indicates Dr. Lilik's involvement in the case. This paragraph alleges that Dr. Lilik conducted testing, but that the test results were not available at the time the letter was written. This information is inconclusive due to the unavailability of the report, and therefore we conclude that the information is not confidential in nature, as it must be revealed during the discovery process.

"Paragraph nine—this paragraph reveals that counsel had the case reviewed by a pediatric neurologist. This expert believed that the plaintiff should have been started on acyclovir shortly after admission to Mercy Hospital, that Mercy should have further cultured for a virus, and that the plaintiff should have been transferred to Geisinger promptly, rather than waiting three days. He further believes that Geisinger should have started the infant on acyclovir and there should not have been a mix-up in obtaining results on herpes. This information is discoverable as the treating pediatric neurologist could be called as a witness by the defense, and therefore we conclude that the information is not confidential in nature.

"Paragraph ten—this paragraph alleges that acyclovir has been shown to be effective in reducing morbidity

by 60 percent or more. This information is statistical in nature, and therefore we conclude that the information is not confidential.

"Paragraph eleven—this final paragraph states 'if you are willing, I would request that you review these records to determine whether early use of acyclovir could have increased this infant's chance of a good result.' This information is the key factual issue involved in the suit, and therefore we conclude that the information is not confidential in nature."

After a careful review of the solicitation letter, we find that there is little, if any, potential that the defense may benefit from Dr. Whitley's exposure to the contact letter authored by plaintiffs' counsel. We recognize plaintiffs' concern that the defendants' expert has been furnished with information intended for the plaintiffs' own expert. However, we do not agree that Dr. Whitley formed mental impressions as a result of plaintiffs' counsel's letter that would preclude the expert from rendering an expert opinion on the defendants' behalf, since the information contained in "exhibit A" is part of the public record in this case as is obvious when the complaint is reviewed. Further, no portion of the letter represents an attorney's work product that is in need of protection, as plaintiffs' theory of the injury is the nucleus of the civil complaint.

There is no evidence that Dr. Whitley was in receipt of the letter, nor can it be shown that Dr. Whitley reviewed the information supplied by plaintiffs' counsel. However, assuming arguendo that Dr. Whitley did read and retain information concerning the plaintiffs' position, we find that the letter does not contain mental impressions, theories or work product by plaintiffs' counsel that would taint the expert's testimony so as to render him unavailable to the defense. Consequently,

we find no merit to plaintiffs' contention that confidential information or attorney work product was disclosed to the expert through the plaintiffs' solicitation letter.

As authority, we are guided by the same rules that apply to the attorney-client privilege. The privilege may be waived by the client. *Rost v. State Board of Psychology,* 659 A.2d 626 (Pa. Commw. 1995). Waiver of the privilege may occur where the client places the confidential information at issue in the case. "It may also be waived where there is no longer an expectation of privacy regarding the information because the client has made it known to third persons." *Rost* at 629. See also, *Commonwealth v. Goldblum,* 498 Pa. 455, 447 A.2d 234 (1982) (attorney-client privilege no longer exists where communications were publicly disclosed by direction of client.)

In the present case, we find that the information included in the plaintiffs' letter to Dr. Whitley is, in essence, information publicly disclosed by the client in their filed complaint. The complaint is a matter of public record, thereby removing any expectation of privacy regarding the information contained within the document. Therefore, we conclude that any allegations of confidential information as supplied in the letter are not supported due to our assessment of the substantially similar information included in plaintiffs' complaint.

## II.

Plaintiffs' counsel additionally cites the language of Pa.R.C.P. 4003.5(a)(3) as preventing Dr. Whitley from serving as defense expert following the alleged initial contact by plaintiffs' counsel. The relevant portion of the rule states:

"A party may not discover facts known or opinions held by an expert who has been *retained or specially employed* by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances." Pa.R.C.P. 4003.5(a)(3). (emphasis added)

Conversely, the defendants argue that the court should not disqualify Dr. Whitley because plaintiffs never "retained" him.

The federal court has dealt with the issue of whether an expert had been "retained" by a party sufficient to preclude the expert from testifying for the other party. Although the federal case law interprets F.R.C.P. 26 rather than Pa.R.C.P. 4003.5, it is clear that the federal court distinguishes between a preliminary "employment interview" with an expert from substantive contacts occurring within the context of a more formalized relationship. *Cordy v. The Sherwin-Williams Company,* 156 F.R.D. 575 (D.N.J. 1994).

In *Cordy,* the court determined that the expert had been retained, where a written contract between the expert and counsel was entered into, where the expert billed for 28 hours' work, and where extensive contacts (*i.e.* rendering of an oral opinion, review of their litigation strategy) took place between the expert and the attorney.

Furthermore, we are guided by *Wang Laboratories v. Toshiba Corp.,* 762 F. Supp. 1246 (E.D. Va. 1991), and adopt a two-pronged test that courts have established in other jurisdictions to determine whether to disqualify an expert who had a prior relationship with a party. The court first considers whether it was objectively

reasonable for the first party who retained an expert to believe that a confidential relationship existed and second, determines whether that party disclosed any confidential information to the expert. *Id.* at 1248. See also, *Cordy v. The Sherwin-Williams Company,* 156 F.R.D. 575 (D.N.J. 1994), citing *Mayer v. Dell,* 139 F.R.D. 271, 279 (S.D. Ohio 1988).

In the instant case, we first look to the communications and relationship established between plaintiffs' counsel and the expert to determine whether it was objectively reasonable for the first party to believe that a confidential relationship existed. By plaintiffs' counsel's own admission, the only contact between the two parties was in the form of a letter addressed to the doctor, soliciting Dr. Whitley's expertise. There is no evidence that Dr. Whitley read, or even received, the letter, and plaintiffs' counsel admits that a follow-up phone call to Dr. Whitley's office yielded no response except as alleged in plaintiffs' supplemental brief, "an impression that the doctor's office was familiar with the nature of the case in that it involved acting as an expert for a plaintiff in a case of herpes encephalitis that occurred in the mid-1980s." It does not appear that plaintiffs' counsel ever spoke to the doctor directly, and certainly the doctor did not accept any form of compensation as offered in plaintiffs' counsel's solicitation letter.

In sum, there was no written retention contract between plaintiffs' counsel and the expert, nor did Dr. Whitley accept any form of compensation. There was no communication between the two parties, or meeting of the minds, except the three-page letter, which this court feels, contains no confidential information. Thus, we conclude that the communication between the two parties did not rise above that conducted at a preliminary "employment interview." Further, based upon the record

and plaintiffs' counsel's representation of the nature of the communication between the two parties, we have determined that it is not reasonable for plaintiffs' counsel to have believed that a confidential relationship existed.

The court next addresses the second prong of the test set forth in *Wang Laboratories,* namely, whether the initial party disclosed confidential information to the expert. Because we have determined that the letter does not constitute confidential information, we find that the letter is not sufficient communication to preclude the expert witness from testifying. Consequently, we find that the plaintiffs fail to meet the burden as established in *Wang,* that would permit this court to disqualify Dr. Whitley as the defense expert.

## III.

In passing, we feel compelled to note that the American Bar Association issued a formal opinion exploring an attorney's duty to avoid a conflict of interest when information imparted by a would-be client interferes with the attorney's representation of yet another client. See formal op. 90-358.

The committee is asked what measures a lawyer should adopt to avoid disqualification under the Model Rules of Professional Conduct from representing an existing client as a result of receiving information relating to the potential representation of a would-be client. The committee assumes, first, that the information is material to the representation of the existing client and its use would be detrimental to the would-be client, and, secondly, that the would-be client has consulted the law firm in good faith for the purpose of obtaining legal representation in the matter.

Model Rule 1.6 provides in relevant part:

"A lawyer shall not reveal information relating to the representation of a client unless the client consents

after consultation, except for disclosures that are impliedly authorized in order to carry out the representation."

The comment to Rule 1.6 states that the main purpose for the rules affording protection of client confidences is to encourage clients "to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter in order to develop all facts essential to proper legal representation." Rule 1.6, comment.

The committee also cites Model Rule 1.8(b), which prohibits the use of information relating to the representation to the disadvantage of a current client, and Model Rule 1.9(c) which prohibits the use of information relating to the representation to the disadvantage of a former client except when the information has become generally known. The committee concludes that Rule 1.6 provides protection to a wider scope of client information than is afforded by the attorney-client privilege in that it extends to "all information relating to the representation of his client."

Of particular note and interest to this court is the committee's determination that the privilege *ordinarily* attaches to communications when made to a lawyer by a prospective client for the purpose of securing legal advice or assistance even though the representation is subsequently declined. Wigmore, Evidence (McNaughton rev.ed. 1961) §2304. McCormick, Evidence (1984 ed.) §88. (emphasis added) According to the committee, the question becomes whether the lawyer has received information that is protected by Model Rule 1.6, and if so whether the lawyer or firm may be limited in representing the existing client.

In their opinion, the committee applies a functional analysis in determining whether the lawyer may con-

tinue to represent the existing clients in three hypothetical cases. The committee states:

"This analysis is based upon the reasonable expectations of the existing and would-be clients, the nature of the information received from the would-be client, the relative duties of loyalty owed the existing and would-be clients, and the detriment to the existing client and the justice system that might occur were the law firm required to withdraw from the existing representation. It is not reasonable, for example, for an existing client to expect that the lawyer will use, in connection with the representation, information relating to the representation of another client or a would-be client to the disadvantage of the other client."

In each of the three hypothetical cases, the committee articulates definite exceptions to the general rule that the lawyer must be disqualified from representing an existing client in the event that the lawyer has been provided information by a potential client. Of particular relevance to the case at bar is the first hypothetical lawsuit.

In case 1, a lawyer in a firm already has been engaged by client A in connection with a potential breach of contract claim of B against A, and a file has been opened. Several weeks later, B consults another lawyer in the firm about the same matter, disclosing only that A is a potential defendant and that the suit involves the breach of contract claim. The conflict of interest is discovered in a routine conflicts check, and the law firm immediately declines to represent B in the matter for that reason.

The ABA Committee concludes that the fact that B has consulted the law firm to prosecute the claim against A may not be communicated to A or used to B's disadvantage because it is information protected

by Rule 1.6. The law firm may nevertheless continue to represent A because the information is neither extensive nor sensitive and the inability to reveal or use the information does not place material limits on A's representation. The committee further cautions that if the disclosures made to the law firm in case 1 had been more extensive or sensitive or more necessary to use inadequately representing the existing client, withdrawal from representations would be required.

Although we recognize that the ABA opinion is not binding on the Pennsylvania courts, we find that the foregoing principles offer guidance by analogy to the case at bar. In our analysis, we draw the parallel between the retained attorney, permitted to continue representation under limited circumstances and the expert consulted by two different parties. Our interpretation of the opinion reinforces the standard established in other jurisdictions in that the committee is rightfully concerned that confidential information received by a previously retained attorney could result in a wrongful communication that should preclude the attorney's services. However, the committee clearly states that where the communications are not extensive or sensitive in nature, withdrawal from representation is not required.

Turning to the matter at hand, the record clearly reflects that the expert had no recollection of the contact letter. The plaintiffs' counsel at no time had any direct oral communication with the expert. Most importantly, we find that the information included in the letter was not confidential in nature, but information publicly disclosed in a filed complaint or properly accessible through pretrial discovery. In other words, this court is not convinced that the information contained in the letter was so extensive or sensitive as to require the disqualification of Dr. Whitley as the defense expert.

## CONCLUSION

In light of the foregoing, we find that there is no evidence cited by the plaintiffs that would indicate to this court that confidential information was imparted or that a confidential relationship existed between the parties. Therefore, we find that Dr. Whitley may be permitted to serve as the defense expert. Plaintiffs' motion to bar R.J. Whitley as a defense expert is denied.

An appropriate order follows.

## ORDER

And now, to wit, June 23, 1998, it is hereby ordered that plaintiffs' motion to bar R.J. Whitley as a defense expert is denied.