J-A16009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY EDWARD KESNER | : | |
| | : | |
| Appellant | : | No. 1118 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 30, 2020,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0004183-2019.

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: SEPTEMBER 24, 2021**

Gary Edward Kesner appeals from the judgment of sentence imposed following his conviction for strangulation and simple assault.[1]  We affirm.

The trial court summarized the relevant factual background as follows:

On Friday, June 28, 2019, Officer Brian Guarnieri, a police officer with the Lower Paxton Township police department since 2004, received a dispatch directing him to contact David Logan regarding an incident that occurred on Thursday, June 27, 2019, between Kesner and Meghan Seiders.  Officer Guarnieri arranged to meet Mr. Logan at Ms. Seiders' apartment.  Officer Guarnieri told Ms. Seiders that he had become aware of a possible incident and asked if she wanted to speak with him about anything that had occurred.  Ms. Seiders invited Officer Guarnieri into her apartment and said that she would like to tell him what had happened the night before.  Ms. Seiders provided a verbal and written statement regarding the incident that occurred the night

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1).

before. Officer Guarnieri observed injuries on Ms. Seiders during this encounter. Specifically, Officer Guarnieri observed four marks on one side of Ms. Seiders' neck and one mark on the opposite of her neck. He further observed redness in the eye area on one side of her face. After contacting an on-duty supervisor to respond with a camera, Officer Guarnieri took photographs of the injuries. Officer Guarnieri then advised Ms. Seiders to take more photographs of her injuries a few days later to document any change in appearance. Officer received more photographs from Ms. Seiders or Mr. Logan a few days later. After receiving these additional photographs, Officer Guarnieri visited Ms. Seiders the following week on July 2, 2019, to verify the injuries to her face. Officer Guarnieri observed that the injuries to Ms. Seiders' face were more pronounced. Officer Guarnieri specifically observed the blackening of her eye. Officer Guarnieri testified that he did not reach out to [Kesner] during his investigation because of the overwhelming evidence that he had with the photographs and what Ms. Seiders reported to him after the incident occurred.

Mr. Logan testified at the jury trial that Ms. Seiders contacted him directly after the incident occurred on June 27, 2019, around 7:00 o'clock p.m. Mr. Logan testified that Ms. Seiders was crying on the phone. Ms. Seiders told him that there was an incident that happened at her apartment and she needed him to come to her apartment. Mr. Logan arrived at Ms. Seiders' apartment and observed that she was still upset. Mr. Logan observed injuries to Ms. Seiders' neck area. Specifically, he observed four marks on one side of her neck and one mark on the opposite side. He further observed redness on Ms. Seiders' eye. According to Mr. Logan's testimony, [Kesner] came to Ms. Seiders' door and was beating on the door. Ms. Seiders told [Kesner] to leave, but [Kesner] did not leave. Ms. Seiders opened the door to try to tell him to leave. Appellant then pushed his way inside the apartment. [Kesner] grabbed Ms. Seiders, they struggled, then they went to her bedroom. [Kesner] was looking for another man in the apartment. [Kesner] then left the apartment after striking Ms. Seiders. Mr. Logan took photographs of Ms. Seiders' neck. Mr. Logan contacted police and arranged to meet Officer Guarnieri at Ms. Seiders' apartment. Mr. Logan was present when Ms. Seiders spoke with Officer Guarnieri. Mr. Logan further testified that he saw Ms. Seiders in person a few times following the incident and observed that her eye area started to turn black.

- 2 -

Ms. Seiders testified at the jury trial that she and [Kesner] dated each other for a few years. She then testified that she and [Kesner] were still in a relationship at the time of the jury trial. According to Ms. Seiders' testimony, [Kesner] came to her apartment on June 27, 2019. [Kesner] believed there was another man in her apartment. Ms. Seiders testified that she let him into her apartment to show him that she did not have another man in her apartment. [Kesner] went to Ms. Seiders' bedroom to look for another man. Ms. Seiders told [Kesner] to leave, but [Kesner] did not leave. Ms. Seiders then began to hit [Kesner] because he would not leave her apartment. [Kesner] then pinned Ms. Seiders to her bed and got on top of her body. Ms. Seiders was not able to fully breathe, so she then kicked him off her. [Kesner] struck her in the face when they left the bedroom Ms. Seiders fell to the floor. [Kesner] then left her apartment. Ms. Seiders testified that she had injuries following the incident and that the injuries hurt.

Raelynn Parson, a Lieutenant at Dauphin County Prison, testified that defendants are routinely photographed when they arrive at the Dauphin County Judicial Center. Defense stipulated to the fact that [Kesner] did not have any injuries on his body at the time he arrived at the Dauphin County Judicial Center.

Trial Court Opinion, 12/1/20, at 2-5 (footnotes and citations to the record omitted).

Kesner was arrested and charged with strangulation, simple assault, and burglary. The matter proceeded to a jury trial in March 2020. At the conclusion of trial, the jury found Kesner guilty of strangulation and simple assault, but not guilty of burglary. On March 18, 2020, the Commonwealth sought leave to amend the information to change the grading of the strangulation charge from a misdemeanor to a felony. The trial court granted the Commonwealth's request to amend the information. On April 16, 2020, Kesner filed a *pro se* correspondence which the trial court treated

as a motion for reconsideration of its order granting the Commonwealth's motion to amend the information. The trial court permitted briefing and supplemental briefing on the motion before denying relief to Kesner. On August 6, 2020, the trial court sentenced Kesner to five to ten years in prison for strangulation, followed by one to two years in prison for simple assault. Kesner did not file any post-sentence motions. Kesner filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Kesner raises the following issues for our review:

I. Was their insufficient evidence presented at trial to sustain convictions for strangulation and simple assault?

II. Did the [trial] court abuse its discretion by overruling [Kesner's] objection to the Commonwealth eliciting hearsay regarding telephone calls between [Kesner] and an unknown male through the affiant in the case?

III. Did the [trial] court err by refusing to give the jury a self-defense instruction at the request of [Kesner]?

IV. Did the [trial] court err by granting the Commonwealth's motion to amend the criminal information from a misdemeanor strangulation to a felony strangulation following the return of the verdict but prior to [Kesner's] sentencing hearing?

Kesner's Brief at 6 (excess capitalization omitted, issues reordered for ease of disposition).

In his first issue, Kesner challenges the sufficiency of the evidence supporting his convictions for strangulation and simple assault. In reviewing

- 4 -

a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

"A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another

person by . . . applying pressure to the throat or neck."  18 Pa.C.S.A. § 2718(a)(1).

"[A] person is guilty of assault if he . . . attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another"  18 Pa.C.S.A. § 2701(a)(1).

In regard to his sufficiency challenge, Kesner merely cites to our standard of review, and then provides two sentences to support his claim that the evidence presented by the Commonwealth at trial was insufficient to establish either a strangulation or a simple assault.  Kesner maintains that, although there was some testimony that he became physical with Ms. Seiders based upon her testimony, he was acting in self-defense.  Kesner additionally claims that there was no definitive testimony that he actually strangled or choked Ms. Seiders.

Kesner's sufficiency challenge is woefully vague and undeveloped.  He does not identify the elements of strangulation or simple assault, or explain how the evidence presented by the Commonwealth was insufficient to establish such elements.  Moreover, Kesner's brief lacks any reference to the record or to the particular evidence presented, and is wholly devoid of citations to any supporting case law discussing the sufficiency of the evidence required to establish strangulation and/or simple assault.  ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (appellant's duty is to present arguments sufficiently developed for our

review; we will not act as counsel and will not develop arguments on behalf of appellant; brief must support claims with pertinent discussion, references to record, and citations to legal authorities); *see also Commonwealth v. Clayton*, 572 Pa. 395, 816 A.2d 217, 221 (Pa. 2002) (undeveloped claims are waived and unreviewable on appeal). Therefore, this claim is waived.

Kesner's sufficiency challenge is also waived because he failed to specify in his Rule 1925(b) statement the elements of his crimes that the Commonwealth allegedly failed to prove. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (holding that when challenging the sufficiency of the evidence on appeal, the appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal). Thus, his first issue entitles him to no relief.

In his second issue, Kesner challenges the trial court's admission of a portion of a transcribed prison telephone conversation that he had with an unidentified male about Ms. Seiders' testimony. He claims the conversation constitutes inadmissible hearsay.

Our Supreme Court has explained that "[h]]earsay, which is a statement made by someone other than the declarant while testifying at trial and is offered into evidence to prove the truth of the matter asserted, is normally inadmissible at trial." *Commonwealth v. Ali*, 10 A.3d 282, 315-16 (Pa. 2010); *see also* Pa.R.E. 801(c), 802. However, out-of-court

statements may be admissible if they offered for some relevant purpose other than to prove the truth of the matter asserted. *Ali*, 10 A.3d 282, 316. For example, an out-of-court statement regarding an attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt. *See Commonwealth v. Johnson*, 668 A.2d 97, 104 (Pa. 1995) (concluding that a witness's testimony that a defendant offered him a bribe not to testify at trial was admissible to show the defendant's consciousness of guilt); *see also Commonwealth v. Goldblum*, 447 A.2d 234, 243 (Pa. 1982) (citing cases for the proposition that the Commonwealth may demonstrate consciousness of guilt through attempts by a defendant to intimidate or influence a witness).

Kesner maintains that, during the direct examination of Officer Guarnieri, the trial court permitted the officer to read a portion of a phone conversation that Kesner had with an unidentified male while Kesner was in prison. Kesner argues that "[s]uch statements were hearsay, as they were not witnessed by either [the prosecutor] or the officer, and the male was never identified or called to testify, depriving [Kesner] his right to cross examine his accuser, in this instance, the unidentified male." Kesner's Brief at 26-27. Kesner claims that the Commonwealth was clearly eliciting hearsay testimony from Officer Guarneri, which was prejudicial to Kesner. According to Kesner, he did not have the opportunity to cross examine the unidentified male regarding the context of the conversation or its meaning,

or whether any of the information in the conversations was relayed to Ms. Seiders.

Kesner further claims that the Commonwealth presented the testimony after Ms. Seiders had already testified in the Commonwealth's case-in-chief. Kesner points out that the Commonwealth did not question Ms. Seiders regarding whether Kesner had tried to influence her testimony through a third party and presented no other evidence in support of that theory of their case. Kesner points out that the trial court sustained his objection to the admission of further prison phone conversations when the court realized that the conversations were with an unidentified male; however, Kesner asserts that "by that time, the damage was already done and [he] was prejudiced." *Id*. at 30.

The trial court considered Kesner's second issue and concluded that it lacked merit. It reasoned:

> In this case, the Commonwealth introduced a portion of a prison telephone call made by [Kesner] to an unknown male. A portion of this conversation was transcribed then read during trial by Officer Guarnieri. [Kesner] objected to the reading of the transcript because of hearsay. As established in **Commonwealth v. Johnson**, [838 A.2d 663, 680 (Pa. 2003),] courts generally admit this type of evidence as non-hearsay to show a defendant's consciousness of guilt by interfering with a witness' testimony. [Kesner] argues that this violated his right to confront a witness, however, this evidence is not being introduced for its truth. The evidence is being introduce solely to show that there was an attempt to interfere with a witness' testimony.

Trial Court Opinion, 12/1/20, at 11-12 (citations to the record omitted).[2]

We discern no abuse of discretion by the trial court in admitting the portion of the prison phone conversation between Kesner and the unidentified male. In that conversation, Kesner told the unidentified male to tell Ms. Seiders that "the only thing she can do is go in to [*sic*] court and say that none of this happened." N.T., 3/9/20, at 127. Kesner then told the unidentified male to tell Ms. Seiders that she could state that Kesner slapped her, but she needed to state that the altercation happened at Kesner's house, rather than at her house. *Id*. at 127-28. Kesner further indicated to the unidentified male that Ms. Seiders needed to state that the photographs of her black-and-blue marks were "fake." *Id*. at 128. Finally, Kesner told the male that, if Ms. Seiders did not provide such testimony, then "I'm done." *Id*. at 128.

As the trial court explained, the statements in question were not being offered for the truth of the matter asserted, but to demonstrate that Kesner was conscious of his own guilt and that he attempted to interfere with Ms. Seiders' testimony by influencing her to provide false testimony at his trial. Thus, the statements in question were non-hearsay and admissible as evidence of Kesner's consciousness of guilt. *See Johnson*, 668 A.2d at

---

[2] The trial court additionally pointed out that Kesner did have an opportunity to cross-examine Ms. Seiders, and he also had the option to call Ms. Seiders on direct but elected not to do so. *See* Trial Court Opinion, 12/1/20, at 12.

104; *see also Goldblum*, 447 A.2d at 243. Accordingly, Kesner's second issue merits no relief.

In his third issue, Kesner challenges the trial court's denial of his request for a jury instruction on self-defense. "Our standard of review when considering the denial of jury instructions is one of deference -- an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. DeMarco*, 809 A.2d 256, 260-61 (Pa. 2002).

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, we are mindful of the following principles:

> [I]t is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa. Super. 2006) (quotation marks omitted).

Defendants are generally entitled to instructions that they have requested and that are supported by the evidence. *See Commonwealth v.*

- 11 -

*Hairston*, 84 A.3d 657, 668 (Pa. 2014). However, "[i]nstructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." *Commonwealth v. Patton*, 936 A.2d 1170, 1176 (Pa. Super. 2007). Thus, "[a] trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict." *Commonwealth v. Browdie*, 671 A.2d 668, 673-74 (Pa. 1996). The reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. *See Hairston*, 84 A.3d at 668.

Self-defense is permitted under our statutes as follows: "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such person on the present occasion." 18 Pa.C.S.A. § 505(a).

Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be established as a matter of law, and this determination must be made by the trial judge. *See Commonwealth v. Mayfield*, 585 A.2d 1069, 1070 (Pa. Super. 1991). Such claim may consist of evidence adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief

- 12 -

or be elicited through cross-examination. *Id*. at 1070-71. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration:

> a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger.

*Id*. at 1071 (citations omitted). If there is any evidence from whatever source that will support these three elements, then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court. *Id*.

Kesner contends that the trial court abused its discretion by refusing to instruct the jury on self-defense. According to Kesner, there was evidence that Ms. Seiders allowed him into her home, then physically attacked him. According to Kesner, Ms. Seiders testified that she had been hitting him all over, and that testimony was supported by a portion of her prior written statement to police. Kesner further claims that Ms. Seiders additionally testified that Kesner, in an attempt to stop her attack, pinned her to the bed. Kesner argues that, even if there was evidence presented to the contrary, the finder of fact should have been allowed to make a determination of what witnesses or evidence to believe or disbelieve. Kesner maintains that, by denying him a self-defense instruction, the jury

was prevented from making a determination as to whether Kesner had a legitimate defense, thereby exonerating him from the charges.

Here, Kesner failed to discuss any of the three specific elements for a claim of self-defense to be placed in issue for a jury's consideration. Nor has he made any reference to the record, or provided this Court with a pertinent discussion of supporting case law explaining why the evidence in this particular case warranted a self-defense instruction. Thus, Kesner's third issue is waived for lack of development. **See Hardy**, 918 A.2d at 771; **see also Clayton**, 816 A.2d at 221.

Moreover, the trial court considered Kesner's third issue and determined that it lacked merit. It reasoned:

> [Kesner's] defense strategy focused on Ms. Seiders' testimony that she began hitting [Kesner] first. This is in contradiction to Ms. Seiders' written statement to police taken the day after the incident took place. Regardless of when Ms. Seiders began hitting [Kesner], it is clear that the testimony presented at trial did not establish the requisite conditions to invoke a self-defense claim. First, [Kesner] was not free from fault in provoking Ms. Seiders as she testified that he would not leave her apartment when she asked him to. Ms. Seiders' written statement further states that [Kesner] forced his way into Ms. Seiders' apartment after knocking and yelling loudly. Second, [Kesner] could not have reasonably believed he was in imminent danger of death or great bodily harm. Nor could [Kesner] have reasonably believed choking and punching Ms. Seiders was necessary to save himself from such imminent danger of death or great bodily harm. [Kesner] was able to pin Ms. Seiders to her bed, impede her breathing, and strike her face with such force that she fell to the ground. It is also important to note that [the] defense stipulated to the fact that [Kesner] did not have any injuries to his body. It is clear from the facts that it was not reasonable for [Kesner] to believe he was in imminent danger of death or great bodily harm. Finally,

[Kesner] could have easily retreated from the situation by leaving Ms. Seiders' apartment when she asked or by not forcing his way into her apartment.

Viewing the evidence in the light most favorable to [Kesner], [Kesner] was not entitled to a self-defense jury instruction because the jury was not afforded evidence on which to base a finding of self-defense.

Trial Court Opinion, 12/1/20, at 17-18 (unnecessary capitalization and citations to the record omitted).

We discern no abuse of discretion by the trial court in denying Kesner's request for a jury instruction on self-defense. Thus, had the issue not been waived for lack of development, we would have determined that it was meritless.

In his final issue, Kesner challenges the trial court's ruling permitting the Commonwealth to amend the criminal information. Pennsylvania Rule of Criminal Procedure 564 governs the amendment of a criminal information and provides as follows:

The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (effective December 21, 2017).

When presented with a question concerning the propriety of an order authorizing the amendment of an information, we consider the following:

Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the court will look to whether the appellant was fully appraised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

**Commonwealth v. Beck**, 78 A.3d 656, 660 (Pa. Super. 2013) (citations and some capitalization omitted). Stated another way, the test is "whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information." **Commonwealth v. Sinclair**, 897 A.2d 1218, 1221 (Pa. 2006).

When the trial court exercises its discretionary power to allow amendment of the information, a defendant will be afforded relief only if the defendant was prejudiced by the amendment. **See Commonwealth v. Veon**, 109 A.3d 754, 768 (Pa. 2015); **see also Commonwealth v. Witmayer**, 144 A.3d 939, 947 (Pa. Super. 2016). If there is no prejudice,

the amendment of the information is allowed up to and including the day of trial. *See Sinclair*, 897 A.2d at 1224.

The factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Beck*, 78 A.3d at 660.

Kesner argues that Pennsylvania allows an amendment to the information prior to trial, but not after a verdict has been rendered, as was permitted in this case. Kesner maintains that, after the jury was charged and sent out for deliberations, the trial court noticed that the strangulation listed on the criminal information was a misdemeanor pursuant to 18 Pa.C.S.A. § 2718 (d)(1), rather than a felony pursuant to subsection (d)(2). Kesner indicates that the Commonwealth then moved to amend the information to change the strangulation count to a felony. According to Kesner, after a brief discussion on the record, the trial court denied the Commonwealth's motion and assured Kesner that the strangulation would remain a misdemeanor. Kesner asserts that, after the jury returned its verdict, the trial court changed its decision when it was informed that the

guidelines on the simple assault conviction were only one to two years in prison. Kesner maintains that the trial court then instructed the parties to file briefs on the amendment of the criminal information to grade the strangulation count as a felony.

Kesner argues that, even though he was aware that the nature of the charges against him indicated a potential felony strangulation count, to allow an amendment of the information after a jury has returned its verdict prevents a criminal defendant from being fully aware of the penalties he is facing if he chooses to proceed to trial. Kesner contends that a criminal defendant, exercising his right to trial by jury, should be guaranteed the certainty of what charges and potential punishments he is facing as soon as jury selection begins. Kesner asserts that, permitting the Commonwealth to amend a count to change the maximum punishment and guideline range of sentences after a jury is seated, or even after a jury returns a verdict, is patently unfair.

Kesner further contends that the trial court's decision presents the appearance of ill will, bias, prejudice, or partiality. He claims that the court only considered amending the strangulation count to a felony (with a maximum punishment of ten years) after the jury acquitted Kesner of burglary (which carried a twenty-five-year mandatory sentence), and after the court realized that the guidelines for simple assault were only one to two years in prison.

In considering Rule 564, we observe that the rule itself provides no limitation of time for the amendment of a bill of information. However, Rule 564 is located in Chapter 5 addressing "Pretrial Procedures in Court Cases." This context clearly indicates that amendment of a bill of information is intended to occur pretrial. *See Sinclair*, 897 A.2d at 1224 (holding that, if there is no showing of prejudice, amendment of information to add an additional charge is proper even on the day of trial); *see also Commonwealth v. Picchianti*, 600 A.2d 597, 599 (Pa. Super. 1991) (same); *Commonwealth v. Womack*, 453 A.2d 642 (Pa. Super. 1982) (same).

Notwithstanding, our review has disclosed instances in which our appellate courts have affirmed the amendment of bills of information during and even after trial where there is no showing of prejudice. *See Beck*, 78 A.3d at 660 (upholding amendment of information after the Commonwealth's case in chief); *Commonwealth v. Mentzer*, 18 A.3d 1200, 1202 (Pa. Super. 2011) (upholding amendment of information at sentencing); *Commonwealth v. Page*, 965 A.2d 1212, 1223 (Pa. Super. 2009) (upholding amendment of information after the close of evidence, but prior to closing arguments); *Commonwealth v. Roser*, 914 A.2d 447, 453 (Pa. Super. 2006) (upholding amendment of information after appellant testified in his defense). The rationale utilized in these cases is that "our courts apply [Rule 564] with an eye toward its underlying purposes and with

a commitment to do justice rather than be bound by a literal or narrow reading of procedural rules." ***Commonwealth v. Grekis***, 601 A.2d 1284, 1288 (Pa. Super. 1992).

Even in instances where the amendment is deemed improper, our Supreme Court has determined that relief is necessary only when the amendment prejudices the defendant. ***See Commonwealth v. Brown***, 727 A.2d 541, 543 (1999) (holding amendment violating Rule 564 only fatal when variance between original and new charges prejudices appellant).

In the instant matter, the trial court considered the six prejudice factors outlined in ***Beck***, ***supra***, and determined that Kesner was not prejudiced by the late amendment. The court reasoned:

> In this case, the first and second factors listed above both weigh in favor of finding no prejudice towards [Kesner]. First, the factual scenario remains the same regardless of whether the charge is a misdemeanor or a felony. As discussed above, a person commits the crime of strangulation, "if the person knowingly or intentionally impedes the breathing or circulation of blood of another person by: (1) applying pressure to the throat or neck. . . ." 18 Pa.C.S.A . § 2718 (a)(1). The difference between the charge as a felony instead of a misdemeanor is the added determination of whether the defendant committed the crime "against a family or household member." 18 Pa.C.S.A. § 2718(d)(2). The fact that [Kesner] and Ms. Seiders' were in a relationship does not change the factual scenario nor is it a fact that was previously unknown to [Kesner] as [he] had personal knowledge of his relationship with Ms. Seiders. Further, [Kesner] was on notice that the Commonwealth intended to address the fact that they were in a relationship as the affidavit of probable cause indicated that [Kesner] and Ms. Seiders were formerly in a relationship.
>
> The third factor listed above is not relevant in this case as [Kesner] waived his preliminary hearing.

- 20 -

The fourth factor listed above weighs in favor of finding no prejudice towards [Kesner]. The basic description of both the charges and the allegations of the crime of strangulation remained the same. The added element regarding the relationship between [Kesner] and Ms. Seiders does not change the basic description of the strangulation charge.

The fifth factor listed above also weighs in favor of finding no prejudice towards [Kesner]. [Kesner's] defense strategy would not have changed if the Commonwealth had amended the information before trial rather than afterwards. During trial, [Kesner's] defense strategy focused on the argument that the incident did not occur at all and that Ms. Seiders lied to Officer Guarnieri. The added fact that [Kesner] and Ms. Seiders were in a relationship does not necessitate a change in defense strategy. [Kesner] noted his relationship with Ms. Seiders many times during trial and clearly wanted the jury to know about their relationship status. Further, [Kesner] was provided the jury instructions before trial began. The jury instructions included the added interrogatory asking the jury whether [Kesner] and Ms. Seiders were in a relationship. Additionally, it is important to point out that [Kesner] admitted in his Motion for Reconsideration that he believed that he was charged with felony strangulation before trial began. [Kesner] prepared for trial with this belief.

Finally, the sixth factor listed above weighs in favor of finding no prejudice towards [Kesner]. In this case, [Kesner] had ample notice and time to prepare a response. The Commonwealth filed its motion to amend the information on March 18, 2020. This court initially granted the motion on March 19, 2020. [Kesner] filed a *pro se* correspondence that this court treated as a motion for reconsideration. This court then directed the Commonwealth to respond to the motion. After careful and thorough consideration of the relevant rule and case law, this court denied [Kesner's] motion for reconsideration. When [Kesner] filed an addendum to his motion, this court, again, directed the Commonwealth to respond and thoroughly considered the addendum and response. This court ultimately denied the addendum and proceeded with sentencing. [Kesner] had ample notice and time to prepare a response.

Trial Court Opinion, 12/1/20, at 14-16 (unnecessary capitalization omitted).

- 21 -

Under these circumstances, we conclude that Kesner has not established prejudice. As the trial court explained, Kesner was clearly aware of the facts underlying the charges in the amended information from the time charges were first brought against him. Indeed, Kesner candidly admits that "he was aware that the nature of the charges against him indicated a potential felony strangulation count." Kesner's Brief at 21.

While the amendment changed the grading of Kesner's strangulation conviction from a misdemeanor to a felony, and increased the applicable period of incarceration, a change in grading or increase in penalties does not necessarily cause prejudice. *See Commonwealth v. Picchianti*, 600 A.2d 597, 599 (Pa. Super. 1991) (holding that the mere possibility amendment of an information may result in a more severe penalty due to the addition of charges is not, of itself, prejudice); *see also Commonwealth v. Jones*, 466 A.2d 691, 692 (Pa. Super. 1983) (holding that a change in the grade of a criminal mischief charge does not amount to an additional charge or to the charging of another offense). Therefore, as we find Kesner had notice of the facts surrounding the amended information and was not prejudiced by the amendment, we conclude that the trial court did not err in allowing the post-verdict amendment. Accordingly, Kesner is due no relief on his final issue.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2021